HARRIS, trustee, *et al. vs.* PALMORE.

1. Where a bill was filed in this state, alleging the purchase of land therein, the payment of the purchase money, a refusal by the vendor to make a title to the vendee, and that the former was a nonresident of the state, and seeking to enforce the purchase and quiet the title and possession, the rule that a defendant in equity in this state must be sued in the county of his residence, is inapplicable; and the question of jurisdiction is, whether any court of equity in the state has jurisdiction.
2. In such a case, a court of equity of this state has jurisdiction to settle the title and to quiet the possession; and a suitor will not be forced into a foreign jurisdiction to settle the title to lands in this state.

3. The cases in 5 *Ga.*, 497, and 8 *Id.*, 83, do not conflict with this ruling. Those were cases *in personam*, and title was not involved; in this it is sought to settle the title because of a perfect equity.

4. While such a bill may have contained a prayer for specific performance, and that the non-resident defendant be required to make a title to complainant, yet where it also contained a prayer for general relief, a court of equity of this state may grant such relief by a decree that the land is complainant's.

5. The court of equity of the county where the land lies has peculiar jurisdiction of such an equitable proceeding *in rem*.

October 21, 1884.

Jurisdiction. Title. Venue. Equity. Before Judge WILLIS. Muscogee Superior Court. May Term, 1884.

Celia Palmore filed her bill in Muscogee superior court against Ann Maria Harris and her husband and trustee, Daniel Harris, both of New York, alleging that complainant had purchased from said Ann Maria a certain lot of land in Muscogee county, and had paid the purchase money in full, and had been in possession from January, 1880, to the filing of the bill, October 2, 1882, but the vendor and her trustee had refused to make a deed to her. The prayer was for specific performance, for subpœna and for general relief.

Service was perfected by publication.

Defendants filed a general demurrer to the bill, and a plea to the jurisdiction, alleging that they were non-residents. The judge's order overruling the demurrer shows that the ground of non-residence was urged under it. The demurrer was overruled, and defendants excepted.

C. J. THORNTON, for plaintiffs in error.

THOS. W. GRIMES; L. F. GARRARD, for defendant.

JACKSON, Chief Justice

This bill was brought by the defendant in error against the plaintiffs in error to perfect titles to a lot of land in

Columbus, in this state, for which the full purchase money has been paid by the former to the latter, by requiring the latter specifically to perform the contract of purchase by making title to the lot, or to grant to the defendant in error such relief as a court of equity can render. The plaintiffs in error demurred thereto, on the ground that it appeared on the face of the bill that they were residents and citizens of New York, and that courts of equity in Georgia had no jurisdiction over them in the premises. The court below overruled this demurrer, and plaintiffs in error excepted.

1. It is to be noted that this is not a case in equity against a citizen or resident of Georgia, who must, under the constitution of this state, be sued in equity in the county of his own residence, or in that of some other co-defendant against whom substantial relief is prayed; but it is a bill brought against citizens and residents of New York, who owned land in Georgia, sold it to a Georgian, pocketed the purchase money, carried it off to New York, and now refuse to comply with the contract of sale and to make titles. The distinction is quite obvious. A demurrer in the one case would show that the equity court of Muscogee county would have no jurisdiction, but that some other court of equity in Georgia, to-wit, that of the residence of the wrong-doers, would have jurisdiction; and thus that Georgia equity courts, somewhere within her own jurisdiction, could grant an adequate remedy for the wrong done. In the case at bar, the demurrer, if sustained, would deny all relief in Georgia, and relegate the complainant to a foreign jurisdiction, if indeed a New York court could settle land titles in Georgia. Therefore everything touching the respective jurisdictions of equity courts in different counties in this state is eliminated from this case, and the question is, has any equity court jurisdiction of this subject-matter in any county in Georgia, and if so, in what county?

2. It would be strange indeed if Georgia courts had no jurisdiction to settle titles to her own lands, because some-

Harris, trustee, *et al. vs.* Palmore.

body claiming title thereto resided without her limits; that she could fix the titles as between Georgians, but could not between a Georgian and a citizen of another state; yet that is the precise question which this demurrer makes. The result would be that, though sovereign over all her territory, though in her be the eminent domain, though her grant be the origin of all title to her lands, she could not adjudicate that title and quiet the possession thereof, in case a foreigner claimed it, however unjustly, unless that foreigner submitted voluntarily to her jurisdiction of his case. Such a doctrine would strike at the foundation of her sovereignty over her own domain, and sap the foundation of her peace and prosperity. It would undermine her sovereignty over her lands, because other states or countries would determine to whom they belonged, and it would be ruinous to her peaceful occupation of her own landed estates by those entitled to it, by having no power to settle the title, and to her prosperity, because nothing is so necessary to that as the unmolested and quiet possession of the land out of which grows all her wealth of food and clothing and comfort. In the last analysis, it is the soil of the state, cultivated by the unshackled and assured proprietors of that soil, in quiet and without threat of interruption of its use, which makes its prosperity.

If this court had ever held any principle antagonistic to this overwhelming conviction of her power over her own territory, and her right, through her own courts, to exercise judicially that power, a full bench should review and reverse such a principle.

3. But no such adjudication has been made. Neither in the 5th *Ga.*, 497, nor in the 8th *Id.*, 83, has such a principle applicable to the case ruled been announced, nor does the line of reasoning in the able opinions in those cases lead to such a conclusion. On the contrary, those were strictly cases *in personam*, not touching title to the *rem*, and that *rem* the land of the state. Both were choses

in action.    It is true that one of them was a chose in action which, under a contract of partnership in a land speculation, asserted a claim to one-third of certain lands obtained by the venture, but the court clearly drew the distinction between such a claim and the title to the land, or any part thereof, recognizing the right of the Georgian to partition with the citizen of New York, if the former had clear title to any part of the land.

The case at bar shows title in the complainant, and to remove all clouds therefrom and settle it is the great object of the bill.    Payment of all the purchase money for land and possession thereunder make title in Georgia, on which, if ousted, ejectment can be maintained and recovery had.    It makes a perfect equity, and for defence or recovery becomes just as effective between the parties as a grant from the state, with regular chain of title down to the litigant.    It is in no sense a chose in action or a personal action, but affects the *rem*, the land and its recovery.

4.  And even if the prayer for specific performance, and the demand that the court direct the New York defendants to the bill to make title to complainant, made it a proceeding *in personam* against them, and not having them in Georgia, its courts could not well enforce the decree to compel them to execute the titles, yet there is the broad prayer for general relief—such relief as a Georgia court can give, and that is easily given by a decree that the land is the complainant's; and thus the decree itself puts the title in complainant, and quiets her possession to the land, and removes all clouds from her title and her quiet enjoyment of the land she bought and paid the New York people for. So equity can settle the case, as respects the land, within Georgia jurisdiction, without forcing the defendants to do anything at all, and without any decree, except that which, by its own operation, fixes title in him who has the perfect equity to a piece of the soil of this state.

Let it be borne in mind that the principle contended for by the able and energetic counsel for the plaintiffs in error

would exclude the jurisdiction of the courts of Georgia as well in cases against foreigners beyond seas—actual foreigners to the American Union—as to citizens of other states in the Union. Its enormity will thus become more apparent. Every foreigner to Georgia, in or out of the American Union, who owns land or other property in this state, can be made to pay any debt he owes here out of such property. It can be attached and made to pay such debt, chose in action or debt of any sort; yet the contention of the plaintiffs in error is that, while the foreigner can be forced by our courts to pay his debts out of property here, our courts have no power to settle land titles against him or quiet the possession thereof. It cannot be.

5. Of course, the equity courts of this state having jurisdiction, the court where the land lies is that which peculiarly has the jurisdiction to grant relief *in rem*. See 30 *Ga.*, 440.

Judgment affirmed.