## HARRIS, trustee, *et al. vs.* COLLINS

[Blandford, J., not presiding.]

1. There was no want of evidence in this case to overcome the defendant's answers, or to justify and sustain the finding of the jury on the several issues of fact submitted to them. The decree was in accordance with the verdict and the proof, as well as the pleadings in the case, and the general exception thereto, even if it had been more specific, would not have been well founded.

(*a.*) An answer to a bill in equity, which does not go into details, but carefully and studiously avoids any of the facts and circumstances involved in and attending the particular dealings in question, and deals in general terms, setting up only that a trustee had no right to sell land under the power contained in the trust deed, is not free from suspicion.

2. The law places persons *non sui juris* under disabilities for the purpose of protecting their rights, but not to enable them to invade or assail the rights of others. Such a person cannot have the benefit of the contract on one side, without returning the equivalent on the other.

(*a.*) The question of fact propounded by the court to the jury exactly covered the case, while that which was requested and refused presented the issue only partially, and was also a question of law rather than one of fact.

3. The answer of a defendant to a bill in equity which asks discovery is evidence, where responsive, and cannot be disregarded unless overthrown by two witnesses or one witness and corroborating circumstances. This rule was fully given in the charge, and it was not necessary to reiterate it on the request of counsel.

(*a.*) While it is the duty of the court to determine as a question of law what parts of an answer in equity are responsive to the bill and, as such, to be regarded as evidence for the defendant, yet generally this duty is discharged when the court instructs the jury that only so much of the answer is to be regarded as evidence as

v 75-7

is responsive to the allegations in the bill, and lays down the rule as to what is a responsive answer. He need not go through the bill and answer and designate in detail what is responsive. If counsel make a point to the court as to the responsive character of any particular part of the answer, it is his duty to decide it and to instruct the jury accordingly.

(*b.*) This does not conflict with the ruling in *Stanford et al. vs. Murphy, adm'r*, 63 *Ga.*, 410.

4. The question made on the demurrer was ruled adversely to the defendants in *Harris, trustee, vs. Palmore*, 74 *Ga.*, 273.

5. The third and thirteenth grounds of the motion for a new trial were properly abandoned in this court.

6. The witness, Needham, testified to nothing more than the existence of a number of deeds left with his uncle, the names signed thereto, the time when and purpose for which they were deposited, and when and how they went out of his possession. He was not permitted to go into the contents of these writings, as no foundation had been laid for the introduction of secondary evidence.

(*a.*) The sayings of an agent, after the termination of his agency, in relation to the business of his principal, are hearsay and inadmissible.

7. Where a bill stated the complainant's cause of action in general, but comprehensive terms, and made a complete case for the relief prayed, and the answer traversed these allegations by vague and unsatisfactory statements, it was competent for the complainant to reply thereto by evidence.

(*a.*) It was pertinent to show that the defendants' agents had such notice of the possession and improvement of the premises in dispute and of the transactions leading thereto as would estop the *cestui que trust*, and that they were guilty both of negligence and of fraud resulting in injury to the complainant. The wilful concealment of material facts, although they were unknown to the principal and known only to the agent, or misrepresentations made by the latter in the business of his agency, will bind the former, as also will the neglect and fraud of the agent; and notice to the agent in any matter connected with his agency is notice to the principal.

January 5, 1886.

Verdict. Charge of Court. Trusts and Trustees. Equity Fraud. Principal and Agent. Estoppel. Evidence. Before Judge WILLIS. Muscogee Superior Court. May Term, 1885.

To the report contained in the decision, it is necessary

to add only that, upon the findings of the jury, the court decreed that the complainant pay into court the balance of the purchase money, and that thereupon the defendants make him a fee simple title, and also that, upon the making of such payment, the fee simple title to the land in dispute vest in the complainant. The defendants moved for a new trial, on the following grounds :

(1.) Because the court committed error in overruling the demurrer of defendants to the bill of complainant. [The demurrer was based on the general ground that the allegations of the bill did not entitle the complainant to the relief prayed for.]

(2.) Because the court overruled objections of defendants' counsel to the following testimony of the witness, Richard Needham :

Q. " State your best recollection as to how they were signed."
A. ", Now, that is pretty hard."   •

This testimony was objected to by the defendants' counsel, on the grounds that the complainant had not shown that the deed or paper was lost or destroyed, and no notice had been given to produce it, but he was seeking to go into the contents of the paper, and that the witness was not a subscribing witness to the deed or paper. The court overruled the objection and allowed the witness to testify whether the deed was signed or not.

(3.) Because the court overruled objections to the following testimony of Richard Needham :

Q. "Mr. Needham, please state to the court and jury whether or not any deed to this land in the 'Northern Liberties;' owned by Daniel Harris, trustee, and his wife, Ann Maria Harris, was ever left with you or your uncle or father?"
A. "Uncle."
Q. "Your uncle, on Broad street here?"
A. "Yes, sir; it has been several years ago; I don't recollect the transaction; I know the papers were there; I think he just left two or three with the understanding that if some parties called and paid on them, they would take them; I don't know how they were taken up, whether he came and got them himself, or some one else."

This testimony was objected to by defendants, on the ground that the deed related to other property, and not the property in question. Counsel for complainant said they expected to connect the testimony and show that Dr. Turner (the uncle) sold the property and had authority to sell. The court overruled the objection.

(3.) [Second number three in motion.—Abandoned.]

(4.) Because the court ruled out, on complainant's motion, the following testimony of Wm. P. Turner:

Q. "Did you ever call on Mr. Needham for any deeds?"

A. "I did; after I had made sale to Collins, to Mr. William Needham—that was Harris' arrangement—I asked him when he gave me power of attorney—says I, 'It will be necessary to have deeds for the sale of this property, and you in Florida; now what about that? I don't care individually to have anything to do with the deeding of them.' 'Well,' said he, 'I have arranged with Mr. Needham to leave blank deeds properly signed, only to fill them up; and as you make your sales, report to him,' and I did so. Mr. Needham said there had been no such thing left with him."

The complainant's counsel moved to rule out what Mr. Needham said, and the court sustained the motion.

(5.) Because the court sustained an objection to the following testimony of W. P. Turner and ruled out the same:

Q. "Why did you not get them?"

A. "He told me he did not have any; there were no deeds left."

(6.) Because the court submitted the following question, in writing, to be answered by the jury: "Did Daniel Harris sell the premises in dispute to Ed. Collins?"

(7.) Because the court submitted to the jury the following question in writing: "Did Ann Maria Harris authorize her trustee to sell the property?"

(8.) Because the court submitted to the jury the following question in writing: "Did Ed. Collins know at the time he purchased the property, if he did purchase it, that it was trust property?"

[When the parties announced ready, the court asked counsel to prepare and submit their issues, and handed to counsel certain questions to be submitted to the jury,

stating that he thought they covered the case, and asked if they desired others submitted. Counsel for defendants then asked that the issue in the ninth ground of the motion for new trial be submitted in addition, without making any objection to the other issues.]

(9.) Because the court refused to submit to the jury the following issue, as requested by defendants' counsel : " Did Ann Maria Harris request Daniel Harris, her trustee, in writing, to sell the premises in dispute ?"

(10.) Because said case was not submitted to the jury upon the bill and allegations made therein and the answer and denials therein, but the court submitted the following issues to the juries :

"1st. Did Daniel Harris sell the premises in dispute to Ed. Collins?

"2d. If Daniel Harris sold the property to Ed. Collins, then has Collins paid the purchase money, or any part of it? If so, how much has he paid ?

"3d. If any part of the purchase money is unpaid, then has Ed. Collins ever tendered the unpaid portion to Daniel Harris ? If so, why was it not paid ?

"4th. Did Ann Maria Harris authorize her trustee to sell the property ?

"5th. Did Ed. Collins know, at the time he purchased the property, if he did purchase it, that it was trust property ?"

(11.) Because the court committed error in the following charge to the jury: " This is a bill that prays discovery, and an answer to that bill which is responsive to it, it takes the testimony of two witnesses, or one witness and corroborating circumstances, to overcome. When a man files a bill and asks for discovery—calls upon the opposite party to discover certain things, and he responds to his inquiry, then the law says that the portion of the answer which is responsive to the inquiry put to him by the bill, it takes two witnesses, or one witness and corroborating circumstances, to overcome ; the testimony of one witness

alone will not overcome it, unless that is corroborated by other circumstances."

(12.) Because the court committed error in the following charge to the jury : " If a trustee sells property, the purchaser who buys it from him with notice, actual or constructive, buys it subject to the trust, and holds it in the same manner as the trustee held; holds it as trustee for the party; but if the party *bona fide* purchases a piece of property from the trustee without notice, either actual or constructive, that it was trust property, then he takes it, notwithstanding the fact that it is trust property, freed from the trust; for instance, if you are trustee for your wife, and go to a party who buys, and has no notice of the trust, either actual or constructive, that you are trustee for your wife, and sell it to him *bona fide*, he buys it in good faith, pays his money for it, without any notice of the trust, then he gets a good title, notwithstanding the fact that you may have been trustee for your wife at the time you sold it. The question is, did Ed. Collins have any notice at the time he bought it that it was trust property ; that it was the property of Mrs. Harris, and not Mr. Harris ?"

(13.) [Abandoned.]

(14.) Because the court refused to give the jury the following charges : " That Ann Maria Harris owned the property in dispute under the deed of trust made by Daniel Harris to Charles W. Chapman, trustee, and that the property could not be sold by Daniel Harris, her trustee, he having been appointed her trustee without her consent and request in writing; and if that consent and request was not had in writing, then her trustee could not sell the property; that the complainant's bill seeks discovery, and the respondents' answers are responsive to the bill as to the purchase and sale of the property, and to authorize a verdict for the complainant, the answer must be rebutted by two witnesses, or one witness and corroborating circumstances.

" The complainant's bill seeks discovery, and the de-

fendants having answered the bill, their answers are responsive to the bill, and before you would be authorized to find a verdict for the complainant, under the answers of the defendants, the answers must be rebutted by two witnesses, or one witness and corroborating circumstances."

(15.) Because the verdict of the jury is contrary to the evidence and the principles of justice and equity.

The motion was overruled, and the defendants excepted.

C. J. THORNTON, for plaintiffs in error.

T. W. GRIMES; L. F. GARRARD, for defendant

HALL, Justice.

The complainant exhibited his bill for the specific performance of a contract alleged to have been made by the defendant, Ann Maria Harris, and her husband and trustee, Daniel Harris, for the sale and conveyance to him of a certain lot in the "Northern Liberties" of the city of Columbus. This was a parol contract entered into in 1830. Under it the complainant went into possession of the premises immediately, improved the same, erected a dwelling thereon, paid taxes therefor, has since been in possession, and has paid all the purchase money except a trifling sum, which he tendered and continues to tender, but which has been refused. He has demanded a conveyance from the defendants, which has been likewise refused. The bill prays discovery and propounds several interrogatories.

The defendants answered, and on the trial, issues of fact only were submitted to the jury, and upon their finding of these several issues, the court decreed a specific execution of the contract in favor of the complainant. In response to the first question submitted, the jury found that Daniel Harris sold the premises to complainant; to the second, they found that complainant had paid seventy dollars of the purchase money; to the third, that he tendered the balance ($4.00); to the fourth, that Ann Maria Harris, the *cestui*

*que trust,* authorized her trustee to sell the property; and to the fifth, that complainant did not, at the time he purchased, know that it was trust property he was buying.

To these several responses the defendants excepted, and moved for a new trial, not only upon the general grounds, but upon special grounds, which embraced quite a number of exceptions to the various rulings and charges of the court.

1. The general character of the defence is such that it does not commend itself very highly to the regard of a court of equity. There is not much doubt that this ignorant and illiterate complainant purchased this property with the full belief that he was acquiring a perfect and unincumbered title, and that such were the representations made to induce him to purchase, by parties in whom he confided. There is as little doubt that he dealt with a person who was appointed agent by Daniel Harris, as the trustee of his wife, and that he authorized this agent to sell, though not to convey this land. This he intended to do himself, for he left deeds with another party, and directed them to be turned over to the agent, upon a compliance with the terms of contracts which this agent had made or might make for the sales of land. This is apparent from Harris's correspondence with Yonge & Grimes, the real estate agents whom he subsequently employed to attend to these matters after this sale was made; and had there not been a difference between them as to the compensation, Turner, the agent, was to receive for the services he rendered in making this and other sales of the adjacent lands committed to him for that purpose, this controversy might not have arisen. It is quite apparent, from this correspondence with Yonge & Grimes, that he did not look after the payment of tax on this and other lands sold by the agent in the years 1880 and 1881; at that time, the complainant had been in possession for nearly two years, and had improved the land, treating it as his own and paying the taxes assessed upon it; then it was that Harris be-

came anxious to redeem it from this charge, and for the first time manifested any concern about the matter. Besides the answers set up, as the sole ground of defence, that he, under the trust deed covering the land, had no right to sell or convey it, except by the written consent of the *cestui que trust*. As to all other facts, the statements therein, so far as they relate to their transactions, through their agent, are of the most sweeping and general character. Neither of these answers goes into detail, and each seems carefully and studiously to avoid any of the facts and cir-. cumstances involved in and attending these particular dealings.

It might not be going out of the way to suggest that an answer thus framed is not free from suspicion. One of the indicia of fraud laid down in Twyne's case, and which has since been recognized, is that " it lurks in generalities;" it is often concealed by having a broad mantle drawn over it. In the significant, but often quoted language of our own Code, §2751, " Fraud may not be presumed, but being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Another prominent fact from which the jury might have been justified not only in inferring the existence of fraud, but might likewise have presumed notice of the transaction to the defendants, was the length of time the complainant was in the open, notorious and adverse possession of the property, claiming it as his own, and improving it in a manner and to an extent that no one but the owner would be likely to do; that during that entire period, they had an agent residing in Columbus, who, so far from giving any warning to desist, encouraged the complainant to proceed, as may be inferred from his silence and acquiescence, if not from his acts in receiving the various installments of purchase money as they fell due.

There is, therefore, no want of evidence to overcome defendants' answers, or to justify and sustain the finding of the jury on the several issues of fact submitted to them. The decree was in accordance with the verdict and the

other proofs, as well as the pleadings in the case, and the defendants' general exceptions thereto, even if they had been more specific, would not have been well founded.

2. The proposition that a power is to be strictly pursued in its execution, and that the mode and manner specified in the instrument creating it for its performance must be followed, is well settled, and was not controverted; but it was insisted that this rule was applicable to cases in which the party claimed title in virtue of a sale under the power, and not to one in which he claimed adversely thereto, and where it was used to deceive and mislead him to his injury, or where, with like intent, it was artfully concealed from him, and he was induced to purchase in ignorance of its existence, and consequently of the incumbrance it put upon his right. The law wisely places persons *non sui juris* under disabilities for the purpose of protecting their rights, but not to enable them to invade or assail the rights of others. As was well remarked by Warner, J., in *Strain, adm'r, vs. Wright,* 7 *Ga.,* 572, "the privilege is to be used as a shield and not as a sword." The person cannot have the benefit of the contract, on the one side, without returning the equivalent, on the other. Here the party not only retains the benefit of the money paid to the agent of her trustee, but likewise the improvements made on the land and its greatly enhanced value on account of the same, and makes no offer of any recompense for either to one who honestly became a purchaser without notice of the rights now set up against him.

The question propounded by the court to the jury exactly covered the case, while that which defendants' counsel requested to have propounded presented the issue made on the testimony only partially, viz., that defendant, Ann Maria Harris, owned the property in dispute under the deed of trust, and that it could not be sold by Daniel Harris, her trustee, without her consent and request in writing, and if that consent or request was not had in writing, then her trustee could not sell the property. The

court refused to submit this issue to the jury, and we think he did right, not only for the reasons above set forth, but for the additional reason that it made no question of fact to be found by them; it was purely a question of law arising on the construction of the deed of trust, separate and distinct from the facts in evidence bearing upon the controverted points in the case.

3. There was no error in the instructions given by the court upon the effect of the defendants' answers as evidence, or as to the quantity of proof required to overcome them. They were evidence when responsive, and could not be disregarded unless overthrown by two witnesses or one witness and corroborating circumstances This was fully and plainly stated, and the request to charge, which the defendants complain was not given, was in substance but a repetition of the same principles, with the addition that the court should further instruct the jury that all the answers upon a particular subject were responsive to the bill. The request did not, however, specifically point out and call particular attention to the part of the answer which it was said was responsive, and without this the court was not compelled to give the charge. In *Webb vs. Robinson et al.*, 14 *Ga.*, 216, 222, this rule was laid down upon the subject. After sta'ing that it is the duty of the court to determine as a question of law what parts of the answer are responsive to the bill, and as such to be regarded as evidence for the defendant, this qualification is added: "Generally, then, the duty of the court in this particular is discharged when it instructs the jury that only so much of the answer is to be regarded as evidence as is responsive to the allegations in the bill, and lays down the rule as to what is a responsive answer. It is not the duty of the court upon request of counsel to take the bill and answer, and going through both, to designate in detail what is responsive. But when counsel choose to do so, they may make a point to the court as to the responsive character of any particular part of the answer, and when

made, it is the business of the court to decide it and instruct the jury accordingly. There is no impracticability in this rule. Self-respect will restrain counsel from making unnecessary points upon the answer, and when real doubts exist whether an answer be responsive, the doubts are for the solution of the court, and not the jury."

The rule as here prescribed is not, as we understand it, modified or changed in the least degree by the decision in *Stanford et al. vs. Murphy,* 63 *Ga.,* 410. The request refused failed to come up to its requirements and was properly passed over.

4. The question made on the demurrer was ruled adversely to the defendants in *Harris, trustee, vs. Palmore,* 74 *Ga.,* 273.

5. The 3d and 13th grounds of the motion for a new trial were abandoned on the hearing in this court, and, as we think, properly.

6. The 2d, 4th and 5th grounds of the motion for a new trial relate to the rejection and introduction of testimony over objections made thereto. Richard Needham testified to nothing more than the existence of a number of deeds left with his uncle, William Needham, as to the names signed thereto, the time when and purpose for which they were deposited, and when and how they went out of his possession. He was not permitted to go into the contents of these writings, as no foundation had been laid for the introduction of secondary evidence. The sayings of William Needham to Turner in relation to this subject, made probably after he had parted with the possession of these papers and had returned them to Harris, and when his agency in the matter was at an end, were properly rejected as being mere hearsay evidence.

7. What has been said disposes of the remaining grounds of the motion with a single exception. The defendants' counsel insists that the evidence, or a portion of it, was not confined to the issues made by the pleadings; but in that, we think, he was mistaken. It is true that the bill stated

the complainant's cause of action in general terms, but they were comprehensive, and made a complete case for the relief prayed. The answer traversed these allegations by vague and unsatisfactory statements, and as under our practice no replication could be filed, the complainant had a perfect right to reply by his evidence. It was pertinent to show that the defendants' agents had such notice of the possession and improvements of the premises and of the transactions leading thereto as would stop the *cestui que trust*, and that they were guilty both of negligence and fraud, resulting in injury to the complainant. That the wilful concealment of material facts, although they were unknown to the principal and known only to the agent, or misrepresentations made by the latter in the business of his agency, will bind the former, as will also the neglect and fraud of the agent in the transaction of such business, is well settled. Code, §§2199, 2201 and citations. Notice to the agent in any matter connected with his agency is notice to the principal. *Ib.*, §2000. These are the principles which would control in a case where the rights of the defendant were unquestionably valid; but in the present instance, it would be no very strained presumption to conclude, from the peculiar recitals in the trust deed itself, and its unusual clauses, especially when unexplained, that it was made for a different purpose than that stated on its face, and when light as to its real purpose was, as in this trial, shed on it by the testimony adduced by the one party and withheld by the other, who, it must be inferred, had at hand the means of clearing up all doubt upon this point, if it had been susceptible of a satisfactory explanation. *Clausulæ insuitæ indicunt suspicionem*, is a familiar maxim, directly applicable to such investigations.

The decree was proper, and, as it seems to us, was, if not absolutely required, at least fully warranted by the evidence in the case.

Judgment affirmed.