CARTER, RITTENBERG & HAINLIN COMPANY v. C. D. HAZZARD.[1]

July 8, 1896.

Nos. 9970—(202).

**Subscription to Corporate Stock—Acceptance.**

 An offer or subscription "to take" shares in a corporation yet to be formed must not only be made, but it must also be accepted. As between the corporation and the subscriber, the equities or rights of corporate creditors not having intervened, such an offer cannot be held in abeyance at the will of other subscribers, who have arrogated to themselves the right to organize the corporation, without regard to the conditions fastened upon the subscription contract, to the exclusion of others equally interested.

**Same—Release by Delay.**

 *Held,* on the undisputed facts in this case, which was brought to enforce payment of the amount of defendant's subscription for preferred stock, that he had been released by reason of delay on the part of the corporation to comply with the condition of his subscription, and by the failure of the corporation to put itself in position to compel him to take and pay for his shares within a reasonable time.

Appeal by defendant from an order of the district court for Hennepin county, Russell, J., denying a motion for a new trial. Reversed.

*Booth & Douglas,* for appellant.

A subscription to the stock of a corporation to be organized is not binding if it is already formed. Indianapolis F. & M. Co. v. Herkimer, 46 Ind. 142; People's Ferry Co. v. Balch, 8 Gray, 303. All conditions precedent of a subscription agreement should be strictly complied with. Morawetz, Corp. § 52; Beach, Pr. Corp. §§ 63, 532, 534, 106, 107; Goff v. Winchester College, 6 Bush (Ky.) 443; 1 Cook, Stock. & Stockh. § 186, and notes; Dorris v. Sweeney, 60 N. Y. 463; Norwich Lock Mnfg. Co. v. Hockaday, 89 Va. 557, 16 S. E. 877; Greenbrier Industrial Exposition v. Rodes, 37 W. Va. 739, 17 S. E. 305. A subscriber to the stock of a corporation to be formed has a right to have a voice in the organization. People's Ferry Co. v. Balch, supra; St. Paul, S. & T. F. R. Co. v. Robbins, 23 Minn. 439. There were such material changes in the circumstances and relations of the

[1] Reported in 68 N. W. 74.

parties to the subscription agreement between the date of signing and the time when the corporation, if ever, was in a position to issue the stock called for by the agreement, as to release defendant from his subscription.    See People's Ferry Co. v. Balch, supra; Capps v. Hastings Prospecting Co., 40 Neb. 470, 58 N. W. 956.    There were such variations between the terms of the agreement and the provisions of the articles as to show that the corporation is not the company to whose stock appellant subscribed.    2 Beach, Pr. Corp. §§ 532, 534; Thompson, Corp. §§ 1235, 1322; Masonic Temple Assn. v. Channell, 43 Minn. 353, 45 N. W. 716; Norwich Lock Mnfg. Co. v. Hockaday, supra; Baker·v. Fort Worth Board of Trade, 8 Tex. Civ. App. 560, 28 S. W. 403.    The organization must be perfected within a reasonable time.    2 Beach, Pr. Corp. § 510, and note 3; People's Ferry Co. v. Balch, supra.    Plaintiff did not perfect its organization within a reasonable time.    Roberts v. Mazeppa Mill Co., 30 Minn. 413, 15 N. W. 680; Cochran v. Toher, 14 Minn. 293 (385); Derosia v. Winona & St. P. R. Co., 18 Minn. 119 (133); Pinney v. First Div. St. Paul & Pac. R. Co., 19 Minn. 211 (251).

*Jayne & Morrison*, for respondent.

Unless time is the essence of a subscription contract and a particular time was stated therein, it makes no difference when the incorporation is completed unless there is evidence that the corporation has totally abandoned the enterprise.    Pittsburg & C. R. R. Co. v. Beyers, 32 Pa. St. 22, 72 Am. Dec. 770.    It was only a year and a half between the filing of the articles and the filing of the proof of publication, and this was not an unreasonable time.    Red Wing Hotel Co. v. Friedrich, 26 Minn. 112, 1 N. W. 827; McMillan v. Maysville & L. R. R., 15 B. Mon. 218, 61 Am. Dec. 181.    Even though there was no legal corporation, plaintiff would have the right to recover. Eaton v. Aspinwall, 19 N. Y. 119, 121; .Dutchess Cotton Manufactory v. Davis, 7 Am. Dec. 459; Sampson v. Bowdoinham Mill Co., 36 Me. 78; 2 Thompson, Corp. § 1846.    By pleading a general denial, defendant admits plaintiff's legal capacity to sue, and consequently cannot question the legal organization or object that there was unreasonable delay in perfecting it.    Pullman v. Upton, 96 U. S. 328; Society for Propagation of Gospel v. Town of Pawlet, 4 Pet. 480; 2 Thompson, Corp. § 1848.    Irregularities in the organization of a cor-

poration are no defense to a suit for subscription to stock. 2 Thompson, Corp. §§ 1849–1851, and cases cited. This is especially true on the ground of estoppel, where the rights of the creditors have intervened. Nat. Commercial Bank v. McDonnell, 92 Ala. 387, 9 South. 149. Irregularities in the manner in which the directors or the majority of the stockholders have exercised the powers of the corporation, such as irregularities in the adoption of by-laws or in the election of officers, are not defenses to a subscription for stock. Ginrich v. Patrons' Mill Co., 21 Kan. 61; Chandler v. Northern Cross R. Co., 18 Ill. 190; Whittington v. Farmers' Bank, 5 Har. & J. (Md.) 489. See Johnson v. Crawfordsville R. Co., 11 Ind. 280. The presumption of law is that acts of directors in directors' meetings are legal and cover necessary legal points. Sargent v. Webster, 46 Am. Dec. 743; Lexington v. Headley, 5 Bush (Ky.) 508; Commonwealth v. Woelper, 3 Serg. & R. 28; 3 Thompson, Corp. § 3927, 8 Am. Dec. 628; Society of Middlesex v. Davis, 3 Metc. (Mass.) 133. See Samuel v. Holladay, 1 Woolw. 400, Fed. Cas. No. 12,288. Mere irregularities in the corporation's organization will not release a subscriber. 2 Thompson, Corp. § 1848, and cases cited.

COLLINS, J. This was an action to recover the sum of $3,000, with interest, on account of a subscription for 30 shares of plaintiff's corporate stock. The cause was tried by the court, and on its findings judgment was ordered for plaintiff. Defendant appeals from an order refusing a new trial.

A number of the specifications of error relate to the rulings upon the admission of evidence, while others question certain findings of fact and conclusions of law.

It appears that three persons, Carter, Rittenberg, and Hainlin, named in the writing hereinafter referred to as parties of the first part, and the "Minneapolis Business Union," named as party of the second part, desiring to organize a manufacturing and jobbing corporation, caused a writing to be prepared which bore date August 5, 1892, in which was stated the object, as well as certain conditions concerning the corporate stock, which was fixed at $100,000. The par value of each share was to be $100, 3,000 thereof to be preferred stock with various advantages, and the balance of 7,000 shares to be common stock. Of the common stock the parties of the first

part were to subscribe for 2,000 shares, and pay in its par value, $20,-000. The party of the second part was to obtain subscriptions for all of the preferred stock, if possible. Whenever common stock of the par value of $20,000 and preferred stock of the value of $25,000 was subscribed for, the corporation was to be organized, under the laws of this state, for the purposes before mentioned. There were other provisions in this writing relating to the rights and powers of the holders of the preferred stock, the right of the holders of the common stock to purchase preferred stock, the salaries of the parties of the first part as employés of the corporation when it should be organized, and other matters of little consequence here, except as they clearly indicate that the management of the concern was to be controlled by the holders of the preferred stock. Subscriptions for the shares last mentioned were to be made subject to the conditions of the writing. Hainlin, for himself and as the attorney in fact for Rittenberg and Carter, subscribed for $20,000 of the common stock in accordance with their agreement. Appended to this writing was a subscription agreement whereby defendant and other parties agreed "to take" the amount of preferred stock set opposite their respective names, the total subscription being for shares of the par value of $27,500, to be paid for as called by the board of directors when the company should be organized. It was upon this subscription that this action was based.

The court below found that defendant signed, or subscribed for his shares, on or about October 15, 1892, the exact day not being fixed by the witnesses. It also found that the corporation was organized some time afterwards under the laws of this state, but it found that the articles of incorporation were filed in the office of the proper register of deeds September 28, and in the office of the secretary of state September 29, 1892, and that the affidavit of the publication of plaintiff's articles was not filed in the office last mentioned until June 13, 1894. It also found that defendant had notice of calls for the payment of his stock subscription early in 1893. There was no finding that defendant ever had notice of any of the meetings of plaintiff's board of directors or of its stockholders, or that he knew of its organization, or that it had commenced business.

As before stated, several of the findings of fact have been challenged as unsupported by the evidence, while it is asserted that the

conclusions of law are not justified by the facts as found. We do not propose to refer to the sufficiency of the evidence, except in a general way, because, from what seems to be undisputed, the action cannot be maintained.

The articles of incorporation executed by Carter, Rittenberg, and Hainlin, subscribers of common stock of the value of $20,000, and by five other persons, subscribers to the preferred stock, purport to have been signed August 13, 1892. A number of these incorporators acknowledged the execution of these articles on that day, and the remainder on September 28, 1892. The affidavit of publication of the articles was not made by the printer until June 13, 1894, almost two years later, and, as before stated, was filed on that day. In view of these facts, it would seem difficult to support the finding that the corporation was organized after defendant subscribed for his shares, for it would appear, almost conclusively, that, instead of subscribing for shares in a corporation to be thereafter formed, as it was recited and stated in the writing to which his subscription was attached, he was actually induced to subscribe for stock shares in a corporation already organized. Or, to put it in another way, the corporation bringing this action had already been formed when defendant agreed to take stock in one yet to be formed. But this is not very material.

Defendant agreed to take preferred stock issued in accordance with the stated conditions, and with certain advantages over the common stock. A majority of the board of directors were to be chosen from among those who held preferred stock, and in various ways was the preferred stock to have the advantage. It was to be preferred stock in fact as well as in name The articles were silent as to classes of stock, and consequently no provision was made for two classes, one known as preferred, and the other as common. Nor was there any provision as to the selection of a majority of the board of directors from the holders of the preferred stock, one of the conditions under which defendant subscribed, while as a matter of fact, of the first board, seven in number, and named in the articles, at least three members were holders of common stock, two had subscribed for preferred stock, and, so far as appears from the record, two were not holders, nor had they subscribed for any stock. The corporation, so far as appeared from its articles of incorporation, was in no condition to comply with the terms of the writing under which defend-

ant subscribed, and hence could not enforce a payment for shares; and it seems to have remained in this condition until January 4, 1895, nearly two and a half years, when by-laws were adopted by the board of directors for the government of the corporation in which are found provisions relative to the issuance of preferred and common stock, the former having the advantages and preferences specified in the writing of date August 5, 1892. There was also a provision in these by-laws for the election of a majority of the board of directors from the holders of preferred stock.

It will be seen, from this statement, that if the plaintiff was not incorporated until after defendant's subscription was made, it was in no position to issue to him the preferred stock he subscribed for, or to compel him to take and pay for it until after the expiration of more than two years from the date of his subscription, although it was actually engaged in business, as was shown on the trial, from about October 5, 1892, at which time its board of directors voted to lease a building for its use. In November of the same year its vice president purchased goods upon credit valued at $30,000, and all calls for payment on account of unpaid subscriptions were made prior to March 20, 1893. From the records of the stockholders' and directors' meetings it appears that no action was taken towards enforcing the payment of the amount of defendant's subscription until March 16, 1893, at which time plaintiff was not in position to issue preferred stock, when it was voted to take such steps as were necessary to compel payment. But at a directors' meeting held April 3, 1895, it was formally resolved to sell elsewhere the shares defendant had agreed to take. A certificate of stock was issued, tendered, and refused by him in February, 1895, and this action was brought in October of the same year.

The paramount question arising from these facts, and the one which we shall make controlling, is whether the plaintiff put itself in position, within a reasonable time, to issue the shares of preferred stock subscribed for, and to compel defendant to take and pay for the same; and if, from the facts here, which are undisputed, the court should have held, as a matter of law, that the delay on the part of the corporation to organize in the manner agreed upon, and to comply with the conditions under which defendant subscribed, was unreasonable, he was released from his subscription.

Of course, what might be a reasonable or unreasonable time for compliance with conditions found in a subscription agreement must be determined from the facts in each case, and in this connection it is to be noticed that it is nowhere claimed that by any act of defendant has he waived this defense, or that he has estopped himself in any way from asserting that his conditional subscription was a mere offer which was not accepted. An offer "to take" shares in a corporation yet to be formed must not only be made, but it must also be accepted. Such an offer cannot be held in abeyance at the will or other subscribers, who have arrogated to themselves the right to organize the corporation, without regard to the conditions fastened upon the subscription contract, to the exclusion of others equally interested. Whether the offer is or is not accepted, and the conditions under which it was made complied with, cannot be made to depend on the final determination of those who take active part in an organization, in which other subscribers are not given an opportunity to participate. If this could be permitted, a few subscribers could organize to suit themselves, without notice to others, conduct the corporate business long enough to discover whether it was to be a success or a failure, and then determine what should be done with the shares subscribed for by persons who had theretofore been deprived of all voice in the conduct of corporate affairs.

The case at bar fairly illustrates the injustice which might follow if such were the law. The plaintiff was organized without any effort to comply with the conditions in respect to preferring $30,000 of the stock, and in utter disregard of the stipulation that a majority of the board of directors should be selected from the holders of this stock, and without notice to defendant or his knowledge, so far as shown by the record. It immediately commenced business, and within 60 days had incurred a liability for goods purchased of a value, almost, of one-third of its capital. The shareholders wholly ignored defendant and his conditional subscription for over two years, although actually engaged in business, and then for the first time put the corporation in position to demand payment from him. If this can be done, and defendant be compelled to respond, those who are responsible for the delay have been given an opportunity to release him if the business proved profitable and the shares a paying investment, and to hold him if losses were sustained and the shares became

valueless. In a case where the rights of creditors are not involved, as in this, we have no hesitation in saying that such an opportunity ought not to be given, and that, upon the facts now before us, plaintiff cannot be permitted to recover. It is not a case where the subscriber, having taken the chances of large gains, has also taken the risk of total loss, and the hardship upon him is not equal to the equities and rights of corporate creditors. In such cases the courts have almost uniformly discountenanced defenses made by subscribers, and have rigidly enforced their liability. We are not placing ourselves in opposition to that wholesome doctrine.

On the facts here we hold that defendant was released by the delay to comply with the conditions of his subscription and the failure of the corporation to put itself in position to compel him to take and pay for his shares within a reasonable time.

Order reversed.