[S. F. No. 4646.    In Bank.—December 7, 1906.]

## THE TITLE AND DOCUMENT RESTORATION COMPANY, Petitioner, v. HON. FRANK H. KERRIGAN, Judge of the Superior Court in and for the City and County of San Francisco, Respondent.

ACT TO ESTABLISH LAND TITLES — LOSS OF RECORDS — PURPOSE OF STATUTE.—The act of June 16, 1906, providing ''for the establishment and quieting of title to real property in case of the loss or destruction of records,'' was intended to provide a method whereby owners in possession of real estate in counties where the records are destroyed to such an extent as to make it impossible to trace a title of record may secure a decree which shall furnish a publicly authenticated title.

ID.—NECESSITY FOR TITLE OF RECORD.—It is practically essential, under our system of registration, to the security of ownership in real property that there should exist some method by which the title may be made clear of record, since a title which cannot be traced and established by some form of public record is practically unmerchantable.

ID.—JUDICIAL NOTICE—RELIANCE UPON RECORDS.—In this country the system of registration has become so completely established that the courts can take judicial notice that in the great majority of cases parties dealing with real estate rely for proof of their titles upon the chain of title that will be disclosed by an examination

CL Cal.—19

of the records, and in a small degree, if at all, upon the possession of the original instruments composing that chain.

ID.—COMMON KNOWLEDGE AS TO LOSS OF RECORDS IN SAN FRANCISCO— NECESSITY TO SECURE EVIDENCE OF TITLE.—It is matter of common knowledge that in the city and county of San Francisco there has been so great a destruction of the public records as to make it impossible to trace any title with completeness or certainty. Some provision was clearly necessary to enable holders and owners of real estate in this city to secure such evidence of title as would enable them to defend their possession and to enjoy the equally important right of disposition.

ID.—CONSTITUTIONALITY OF ACT—CONSIDERATIONS EMPHASIZING PRESUMPTION OF VALIDITY.—Considerations as to the real scope and purpose of the act, though not affording any ground for disregarding constitutional provisions, yet serve to emphasize the rule that in passing upon the constitutionality of a law every presumption and intendment in favor of the validity of the enactment are to be given effect.

ID.—DUE PROCESS OF LAW—PROCEEDING IN REM OR QUASI IN REM.—The act in question does not deprive any person of property without due process of law. The action does not differ in character from the action to determine heirship, which is a proceeding *in rem.* In any view the proceeding contemplated by the act is quasi *in rem,* merely to affect the interest of the defendant in specific real property within the state which has at the·outset of the proceeding been brought within the control of the court. The constitutional requirement as to such action is satisfied by a substituted service of summons as to defendants not found within the state.

ID.—DUE PROCESS IN ACTION TO QUIET TITLE—JURISDICTION OF CHANCERY IN PERSONAM—POWER OF LEGISLATURE.—While in the exercise of its inherent equity jurisdiction in an action to quiet title a court of chancery acts only *in personam,* it is competent for the legislature, so far as the constitutional provision regarding due process of law is concerned, to confer upon courts of equity an extended power, so as to permit the court to bind the interest of persons in real property so far as that property alone is concerned, even though the defendant may not have been personally served with process within the state.

ID.—DUE PROCESS AS TO KNOWN CLAIMANTS.—So far as the rights of known claimants are concerned, who cannot be personally served with summons by reason of non-residence, the service by posting, publication, and mailing, and the naming of them in the memorandum appended to the summons, and in the affidavit required by the act to be served upon them, and notifying them when to appear, constitute due process of law; and the fact that they are not named in the complaint and body of the summons is immaterial.

ID.—DUE PROCESS AS TO UNKNOWN CLAIMANTS.—The notice to unknown claimants, by posting the summons describing the nature of the

action, the property involved, the name of the plaintiff, the relief sought upon the property, and its publication in a newspaper for two months, and the record of the notice of *lis pendens*, is as complete and full as from the nature of the case could reasonably be expected, and constitutes due process of law as to them.

ID.—METHOD OF PROCEDURE AS TO UNKNOWN CLAIMANTS—COMMON LAW —POWER OF LEGISLATURE.—The fact that the procedure known to the common law cuts off the rights of unknown claimants only by failure to assert them within a limited period is not a sufficient objection to the procedure prescribed by the act as to unknown claimants. The legislature may prescribe novel and unprecedented methods of procedure, provided they afford the parties affected substantial securities against arbitrary and unjust spoliation, which are embraced within the system of jurisprudence prevailing throughout the land.

ID.—NECESSITY OF SETTLING TITLES AS TO UNKNOWN CLAIMANTS.—The power of the state to settle titles within its borders and to allow a substituted service should not be limited to known claimants who cannot be served; but in order to exercise this power to the fullest extent it is necessary that it should be made to operate on all interests, known and unknown. A proceeding to settle titles against all the world necessarily involves getting rid of unknown claimants, and such claimants cannot be dealt with by personal service.

ID.—CONSTRUCTION OF STATUTE—REASONABLE DILIGENCE REQUIRED TO DISCOVER ADVERSE CLAIMANTS—MEANS OF KNOWLEDGE.—The statute must be construed as requiring the exercise of reasonable diligence on the part of the plaintiff to discover adverse claimants, and when discovered to make them parties defendant; and the means of knowledge in this respect must be deemed equivalent to actual knowledge. The plaintiff is under the duty of inquiry as to the names and residences of all persons who may claim an adverse interest. So construed, the statute does not, nor can an action prosecuted under it, deprive any person of his property without due process of law.

ID.—PROCEEDINGS JUDICIAL AND NOT ADMINISTRATIVE.—The proceeding to establish title of record under the act is judicial, and not administrative, in its nature. Whenever the law confers a right and authorizes an application to a court of justice to enforce that right, the proceedings upon the application are judicial in their nature; and it is immaterial whether, in response to the notice given to all claimants, known and unknown, there is or is not any appearance to contest the right.

ID.—SPECIAL LEGISLATION—REGULATING PRACTICE OF COURTS.—The fact that the act in controversy makes provisions regulating the practice in the actions therein provided for, which are not to be found in other judicial proceedings, does not necessarily make it special legislation forbidden by subdivision 3 of section 25 of article IV of the constitution, prohibiting the passage of special laws "regulating the

practice of courts of justice." The proceeding created by the act is sufficiently distinct and different from ordinary civil actions covered by the general rules of the code to justify the creation of a class of actions characterized by the special rules of procedure provided for in the act.

ID.—DESTRUCTIVE AGENCY SPECIFIED.—The statute is not special legislation merely because it enumerates destruction of records by earthquake, fire, or flood. The three agencies named are those which are most likely to occur in this state, and are the only ones which, so far as we know, have caused any considerable destruction of public records. These facts furnish ample ground for limiting the operation of the act to the cases to which it has been made applicable.

ID.—SUFFICIENCY OF TITLE.—The title of the act sufficiently complies with section 24 of article IV of the constitution.

PETITION for Writ of Mandate to the Superior Court of the City and County of San Francisco. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, Walter Rothchild, Joseph H. Mayer, Joseph Hutchinson, James S. Hutchinson, Chas. S. Wheeler, *Amicus Curiæ*, and J. F. Bowie, Van Fleet & Mastick, William H. H. Hart, and Bishop & Hoefler, *Amici Curiæ*, for Petitioner:

The state may, as sovereign over lands situated within it, provide for an adjudication of title, in a proceeding *in rem* or in the nature of a proceeding *in rem*, which shall be binding upon all persons known and unknown. (*State v. McGlynn*, 20 Cal. 233, 81 Am. Dec. 118; *Perkins* v. *Wakeham*, 86 Cal. 580, 21 Am. St. Rep. 67, 25 Pac. 51; *McLaughlin* v. *McCrory*, 55 Ark. 442, 29 Am. St. Rep. 56, 18 S. W. 762; *Hall* v. *Meloin*, 62 Ark. 439, 54 Am. St. Rep. 301, 35 S. W. 1109; *McMahon* v. *Smith*, 69 Ark. 591, 65 S. W. 459; *Hanscom* v. *Hanscom*, 6 Colo. App. 97, 39 Pac. 885; *Harris* v. *Palmore*, 74 Ga. 273; *People's Nat. Bank* v. *Cleveland*, 117 Ga. 908, 44 S. E. 20; *Pile* v. *McBratney*, 15 Ill. 314; *Smith* v. *Stevens*, 82 Ill. 554; *Bertrand* v. *Taylor*, 87 Ill. 235; *Mulvey* v. *Gibbons*, 87 Ill. 367; *Thornton* v. *Houtze*, 91 Ill. 199; *Heacock* v. *Lubuke*, 107 Ill. 396; *Heacock* v. *Hosmer*, 109 Ill. 245; *Gage* v. *Caraher*, 125 Ill. 447, 17 N. E. 777; *Harding* v. *Fuller*, 141 Ill. 308, 30 N. E. 1053; *Burton* v. *Perry*, 146 Ill. 71, 34 N. E. 60; *People* v.

*Simon,* 176 Ill. 165, 68 Am. St. Rep. 175, 52 N. E. 910, 44 L. R. A. 801; *Unknown Heirs* v. *Kimball,* 4 Ind. 546, 58 Am. Dec. 638; *State* v. *Scanlon,* 2 Ind. App. 320, 28 N. E. 426; *Quarl* v. *Abbett,* 102 Ind. 233, 52 Am. Rep. 662; *Otis* v. *De Boer,* 116 Ind. 531, 19 N. E. 317; *Mason* v. *Messenger,* 17 Iowa, 264; *Guise* v. *Early,* 72 Iowa, 283, 33 N. W. 683; *Williams* v. *Westcott,* 77 Iowa, 332, 14 Am. St. Rep. 287, 42 N. W. 314; *Ruppin* v. *McLaughlin,* 122 Iowa, 343, 98 N. W. 153, 154; *Venable* v. *Dutch,* 37 Kan. 515, 15 Pac. 520, 1 Am. St. Rep. 262; *Dillon* v. *Heller,* 39 Kan. 599, 18 Pac. 693; *Covington etc. R. R. Co.* v. *Bowler,* 9 Bush (Ky.) 468; *Blight* v. *Banks,* 6 Mon. T. B. (Ky.) 192, 220, 17 Am. Dec. 136; *Benningfield* v. *Reed,* 8 B. Mon. (Ky.) 102; *Wuntzel* v. *Landry,* 39 La. Ann. 312, 1 South. 893; *Young* v. *Upshur,* 42 La. Ann. 362, 21 Am. St. Rep. 381, 7 South. 557; *Coombs* v. *Persons Unknown,* 82 Me. 326, 19 Atl. 826; *Loring* v. *Hildreth,* 170 Mass. 328, 64 Am. St. Rep. 301, 49 N. E. 652, 40 L. R. A. 127; *Tyler* v. *Court of Registration,* 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433; *Lane* v. *Innis,* 43 Minn. 137, 45 N. W. 4; *Cousins* v. *Alworth,* 44 Minn. 505, 47 N. W. 169, 10 L. R. A. 504; *Ware* v. *Easton,* 46 Minn. 180, 48 N. W. 775; *Shepherd* v. *Ware,* 46 Minn. 174, 48 N. W. 773, 24 Am. St. Rep. 212; *Inglee* v. *Weller,* 53 Minn. 197, 55 N. W. 117; *Corson* v. *Shoemaker,* 55 Minn. 386, 57 N. W. 134; *McClymond* v. *Noble,* 84 Minn. 329, 87 Am. St. Rep. 354, 87 N. W. 838; *State* v. *Westfall,* 85 Minn. 437, 89 Am. St. Rep. 571, 89 N. W. 175, 57 L. R. A. 297; *Dewey* v. *Kimball,* 89 Minn. 454, 95 N. W. 317, 895, 96 N. W. 704; *Belcher* v. *Mhoon,* 47 Miss. 613; *Brown* v. *Levee Commissioners,* 50 Miss. 468; *State* v. *Staley,* 76 Mo. 158; *Charles* v. *Morrow,* 99 Mo. 638, 12 S. W. 903; *Coombs* v. *Crabtree,* 105 Mo. 292, 16 S. W. 830; *Meyers* v. *McRay,* 114 Mo. 377, 21 S. W. 730; *Rohrer* v. *Ader,* 124 Mo. 24, 27 S. W. 606; *Peters* v. *Dunnells,* 5 Neb. 460; *Keene* v. *Sallenbach,* 15 Neb. 200, 18 N. W. 75; *Watson* v. *Ulbrich,* 18 Neb. 186, 24 N. W. 732; *Lantry* v. *Parker,* 37 Neb. 353, 55 N. W. 962; *Scarborough* v. *Myrick,* 47 Neb. 795, 66 N. W. 867; *Fowler* v. *Brown,* 51 Neb. 414, 71 N. W. 54; *Allen* v. *Allen,* 11 How. Pr. 277; *Wheeler* v. *Scully,* 50 N. Y. 667; *Abbott* v. *Curran,* 98 N. Y. 665; *Moran* v. *Conoma,* 13 N. Y. Supp. 625; *Guyer* v. *Raymond,* 29 N. Y. Supp. 395, 8 Misc. Rep. 606; *People* v. *Ryder,* 65 Hun, 175, 19 N. Y. Supp. 977; *Sandiford* v. *Town of Hempstead,* 90

N. Y. Supp. 76, 79, 97 App. Div. 163; *Bernhart* v. *Brown,* 118 N. C. 700, 24 S. E. 527, 715, 36 L. R. A. 402; *Sullivant* v. *Weaver,* 10 Ohio, 278; *Sloan* v. *Thompson,* 4 Tex. Civ. App. 419, 23 S. W. 613; *Pool* v. *Lamon* (Tex. Civ. App.), 28 S. W. 363; *Bassett* v. *Sherrod,* 13 Tex. Civ. App. 327, 35 S. W. 312; *American Building Assoc.* v. *Matthews,* 13 Tex. Civ. App. 425, 35 S. W. 690; *Kilmer* v. *Brown,* 28 Tex. Civ. App. 420, 67 S. W. 1090; *Byrnes* v. *Sampson,* 74 Tex. 79, 11 S. W. 1073; *Talliaferro* v. *Butler,* 77 Tex. 578, 14 S. W. 191; *Hardy* v. *Beatty,* 84 Tex. 562, 31 Am. St. Rep. 80, 19 S. W. 778; *Kane* v. *Rock River Canal Co.,* 15 Wis. 179; *Truesdell* v. *Rhodes,* 26 Wis. 215; *Gray* v. *Gates,* 37 Wis. 614; *Bennett* v. *Fenton,* 41 Fed. 283, 10 L. R. A. 500; *Porter Land etc. Co.* v. *Baskin,* 43 Fed. 323; *Morris* v. *Graham,* 51 Fed. 53; *Bickell* v. *Farrell,* 82 Fed. 220; *Ormsby* v. *Ottman,* 85 Fed. 492, 29 C. C. A. 295; *Morrison* v. *Marker,* 93 Fed. 692; *Connor* v. *Tennessee etc. Ry. Co.,* 109 Fed. 931, 48 C. C. A. 730, 54 L. R. A. 687; *Johnson* v. *Hunter,* 127 Fed. 219; *York County Sav. Bank* v. *Abbot,* 131 Fed. 984; *Parker* v. *Overman,* 18 How. 137; *United States* v. *Fox,* 94 U. S. 315, 320; *Pennoyer* v. *Neff,* 95 U. S. 714, 727, 734; *Huling* v. *Kaw Valley Ry. etc. Co.,* 130 U. S. 559, 9 Sup. Ct. 603; *Mellen* v. *Iron Works,* 131 U. S. 352, 9 Sup. Ct. 781; *Arndt* v. *Griggs,* 134 U. S. 316, 10 Sup. Ct. 557; *Gormley* v. *Clark,* 134 U. S. 338, 10 Sup. Ct. 554; *Dick* v. *Foraker,* 155 U. S. 404, 15 Sup. Ct. 124; *Lynch* v. *Murphy,* 161 U. S. 247, 16 Sup. Ct. 523; *Hamilton* v. *Brown,* 161 U. S. 256, 16 Sup. Ct. 585; *Roller* v. *Holly,* 176 U. S. 398, 20 Sup. Ct. 410; *Overby* v. *Gordon,* 177 U. S. 221, 20 Sup. Ct. 603; *Leigh* v. *Green,* 193 U. S. 79, 24 Sup. Ct. 390.) The statute is not unconstitutional. All presumptions favor its validity. (*Bourland* v. *Hildreth,* 26 Cal. 180; *University of California* v. *Bernard,* 57 Cal. 612; *People* v. *Hayne,* 83 Cal. 111, 17 Am. St. Rep. 211, 23 Pac. 1, 7 L. R. A. 348; *Bates* v. *Gregory,* 89 Cal. 394, 26 Pac. 891; *In re Madera Irr. Dist.,* 92 Cal. 307, 27 Am. St. Rep. 106, 28 Pac. 272, 675; *Woodward* v. *Fruitvale Dist.,* 99 Cal. 554, 34 Pac. 239; *De Yoe* v. *Superior Court,* 140 Cal. 476, 98 Am. St. Rep. 73, 74 Pac. 28; *In re Finley,* 1 Cal. App. 198, 81 Pac. 1041; *Munn* v. *Illinois,* 94 U. S. 113; *Powell* v. *Pennsylvania,* 127 U. S. 678, 8 Sup. Ct. 992, 1257; *Booth* v. *Illinois,* 184 U. S. 426, 22 Sup. Ct. 425; *Otis* v. *Parker,* 187 U. S. 609, 23 Sup. Ct. 168; Cooley on Con-

stitutional Limitations, 7th ed., p. 252.)   There is no want of
due process of law, by reason of constructive notice therein
provided for.   (*Hahn* v. *Kelley,* 34 Cal. 391, 417, 94 Am. Dec.
742; *Eitel* v. *Foote,* 39 Cal. 439; *Arnold* v. *Kahn,* 67 Cal. 472,
8 Pac. 36; *Crall* v. *Poso Irr. Dist.,* 87 Cal. 140, 147, 26 Pac.
797; *Otis* v. *Dargan,* 53 Ala. 178; *Martin* v. *King,* 72 Ala. 354;
*Hurlburt* v. *Thomas,* 55 Conn. 181, 3 Am. St. Rep. 343, 10 Atl.
556; *Bertrand* v. *Taylor,* 87 Ill. 235; *Beard* v. *Beard,* 21 Ind.
321; *Quarl* v. *Abbett,* 102 Ind. 233, 52 Am. Rep. 662, 1
N. E. 476; *Essig* v. *Lower,* 120 Ind. 239, 21 N. E. 1090; *Mason*
v. *Messenger,* 17 Iowa, 261; *Burlington etc. R. R. Co.* v. *Dey,* 82
Iowa, 312, 31 Am. St. Rep. 473, 48 N. W. 98, 12 L. R. A. 436;
*Gilchrist* v. *Schmeidling,* 12 Kan. 262; *Burnam* v. *Common-
wealth,* 1 Duv. 210; *Covington etc. R. R. Co.* v. *Bowler,* 9
Bush, 468; *Tyler* v. *Court of Registration,* 175 Mass. 71, 55
N. E. 812, 51 L. R. A. 433; *Loring* v. *Hildreth,* 170 Mass. 328,
64 Am. St. Rep. 301, 49 N. E. 652, 40 L. R. A. 127; *Shepherd*
v. *Ware,* 46 Minn. 179, 24 Am. St. Rep. 212, 48 N. W. 773;
*Corson* v. *Shoemaker,* 55 Minn. 386, 57 N. W. 134; *State* v.
*Westfall,* 85 Minn. 437, 89 Am. St. Rep. 571, 89 N. W. 175,
57 L. R. A. 297; *United States Trust Co.* v. *United States Fire
Ins. Co.,* 18 N. Y. 200; *Happy* v. *Mosher,* 48 N. Y. 313; *People*
v. *Essex County,* 70 N. Y. 228; *Arndt* v. *Griggs,* 134 U. S. 316,
10 Sup. Ct. 557; *Gormley* v. *Clark,* 134 U. S. 338, 10 Sup. Ct.
554; *Huling* v. *Kaw Valley Ry. etc. Co.,* 130 U. S. 559, 9 Sup.
Ct. 603; Freeman on Judgments, sec. 570; 10 Am. & Eng.
Ency. Law, 2d ed. 299.)   The legislature has power to estab-
lish new remedies, or to change common-law remedies, or
establish special proceedings, without violating the principle of
"due process of law."   (*Hurtado* v. *California,* 110 U. S.
516, 4 Sup. Ct. 111, 292; *Tyler* v. *Court of Registration,* 175
Mass. 71, 55 N. E. 812; *People* v. *Essex County,* 70 N. Y. 228;
*Taylor* v. *Beckham,* 178 U. S. 548, 20 Sup. Ct. 890, 1009; *Iowa
R. R. Co.* v. *Iowa,* 160 U. S. 389, 16 Sup. Ct. 344; *Hagar* v.
*Reclamation Dist.,* 111 U. S. 701, 4 Sup. Ct. 663; *Kennard* v.
*Louisiana,* 92 U. S. 480; *Ex parte Wall,* 107 U. S. 265, 289,
2 Sup. Ct. 569.)   The requirement or non-requirement of an
affidavit of diligence is discretionary with the legislature, and
is not involved in "due process of law."   No constitutional
requirement provides that any fact shall be proved by affidavit.
Affidavits of diligence are not required in this state for publi-

cation against non-residents. (*Anderson* v. *Goff*, 72 Cal. 65, 1 Am. St. Rep. 34, 13 Pac. 73; *Furnish* v. *Mullan*, 76 Cal. 648, 18 Pac. 854.) Where no affidavit is required the plaintiff cannot shut his eyes against the means of knowledge of claimants, and treat them as unknown, where reasonable inquiry would ascertain the fact of known claimants, and the duty of such inquiry with ordinary diligence makes the distinction between known and unknown claimants a fair one. (*Shepherd* v. *Ware*, 46 Minn. 174, 24 Am. St. Rep. 212, 48 N. W. 773; *State* v. *Westfall*, 85 Minn. 437, 89 Am. St. Rep. 571, 89 N. W. 175; *Tricker* v. *Wells*, 12 Vt. 240; *Moore* v. *Quint*, 44 Vt. 97; *Farnham* v. *Thomas*, 56 Vt. 35.) An "unknown" party must be unknown to all of the plaintiffs. (*Kane* v. *Rock River Canal Co.*, 15 Wis. 179; *Jeffreys' Heirs* v. *Hand's Heirs*, 7 Dana (Ky.) 89.) Ignorance of name must be real and not feigned. (*Rosencrantz* v. *Rozen*, 40 Cal. 489.) The means of knowledge is equivalent to knowledge. (*Wood* v. *Carpenter*, 101 U. S. 143.) The judgment, where the statute prescribes no affidavit of diligence, involves an adjudication that the case was a proper one for constructive service. . (*Sloan* v. *Thompson*, 4 Tex. Civ. App. 419, 23 S. W. 613, and cases cited; 87 Am. St. Rep. 363, note.) There is no "administrative proceeding" here involved; but the adjudication provided for by the statute in question is an adjudication in a "judicial proceeding," after an opportunity afforded to all claimants to be heard, and is "due process of law" in that regard, although there may be no appearance of adverse parties and no actual controversy. (*Robbins* v. *City of Chicago*, 4 Wall. 672; *In re Pacific Ry. Commission*, 32 Fed. 241, 12 Sawy. 559; *Ormsby* v. *Webb*, 134 U. S. 47, 10 Sup. Ct. 478; *People* v. *Simon*, 176 Ill. 165, 68 Am. St. Rep. 175, 52 N. E. 910, 44 L. R. A. 801; *Tyler* v. *Court of Registration*, 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433; *State* v. *Westfall*, 85 Minn. 437, 89 Am. St. Rep. 571, 89 N. W. 175; *Worthen* v. *Ratcliffe*, 42 Ark. 330; 24 Am. & Eng. Ency. Law, 2d ed., 735.) Even *ex parte* proceedings in courts may involve the exercise of judicial power, though there is no controversy. (*In re La Societe Francaise*, 123 Cal. 525, 56 Pac. 458; Code Civ. Proc., secs. 1227, 1275-1279, 1723, 1811; *Bruce* v. *Fox*, 1 Dana (Ky.) 447; *McAllister* v. *Hamlin*, 83 Cal. 361, 23 Pac. 357; *Stevens* v. *Truman*, 127 Cal. 155, 59 Pac. 397; *Charles Greer's Son* v. *Salas*, 31 Fed.

106; *In re An Alien,* 7 Hill, 137; *Ex parte Milligan,* 4 Wall. 2.)
Special proceedings, as well as actions, are judicial proceedings. (Code Civ. Proc., secs. 20-22, 30.) Any legal application to a court of justice seeking a remedy which the law affords is a judicial proceeding. (*Evans* v. *Evans,* 105 Ind. 204, 5 N. E. 24, 718; *State* v. *Newell,* 13 Mont. 302, 34 Pac. 28; *Sinking Fund Cases,* 99 U. S. 761; *Martin* v. *Simpkins,* 20 Cal. 438, 38 Pac. 1092.) Proceedings *in rem* are usually non-controversial judicial proceedings. (*Gaines* v. *Fuentes,* 92 U. S. 10, 21; *Sohler* v. *Sohler,* 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282; *Good* v. *Montgomery,* 119 Cal. 552, 63 Am. St. Rep. 145, 51 Pac. 681; *Toland* v. *Earl,* 129 Cal. 148, 79 Am. St. Rep. 100, 61 Pac. 914.) Judicial proceedings against ''unknown claimants'' are recognized in the statutes of this state. (Code Civ. Proc., secs. 749 et seq., 753 et seq., 814 et seq., 1664; Pol. Code, sec. 3635 et seq.; Stats. 1897, 30; 1899, 106.) Judicial proceedings *in rem* or in that nature are also fully recognized. (*Lower Kings River Dist.* v. *McCullah,* 124 Cal. 174, 175, 56 Pac. 887; *Reclamation Dist.* v. *Sels,* 117 Cal. 164, 166, 49 Pac. 131; *In re Tracey,* 136 Cal. 385, 69 Pac. 20; *In re De Leon,* 102 Cal. 541, 36 Pac. 864; *In re Barton,* 93 Cal. 463, 29 Pac. 36.) Judgments *in rem* bind all persons who might have been parties anywhere in the world. (*State* v. *McGlynn,* 20 Cal. 233, 81 Am. Dec. 118; *Kearney* v. *Kearney,* 72 Cal. 591, 15 Pac. 769; *Wm. Hill Co.* v. *Lawler,* 116 Cal. 359, 48 Pac. 323; *In re Blythe,* 110 Cal. 234, 42 Pac. 643; *Estate of Hinckley,* 58 Cal. 457; *Rialto Irr. Dist.* v. *Brandon,* 103 Cal. 387, 37 Pac. 484; *Crall* v. *Poso Irr. Dist.,* 87 Cal. 140, 26 Pac. 797; *Burris* v. *Kennedy,* 108 Cal. 336, 337, 41 Pac. 458; *Scarf* v. *Aldrich,* 97 Cal. 360, 33 Am. St. Rep. 190, 32 Pac. 324; *State* v. *Westfall,* 85 Minn. 437, 89 Am. St. Rep. 571, 89 N. W. 175; *Castrique* v. *Imrie,* 4 H. L. 414, 429; *Cross* v. *Armstrong,* 44 Ohio St. 613, 10 N. E. 160; *Broderick's Will,* 21 Wall. 503; Freeman on Judgments, ch. 28; Chand. on Res Adjudicata, ch. 8.) The act violates no principle of uniformity of operation, and is not special legislation. It is sufficient that it provides for a distinct class of proceedings, suitable to the nature of the case and applicable to all cases and persons standing in the same intrinsic category. (*Abell* v. *Clark,* 84 Cal. 230, 24 Pac. 383; *Escondido High School Dist.* v. *Seminary,* 130 Cal. 128, 136, 62 Pac. 408; *Potwin* v. *Johnson,* 108 Ill.

70; *Arms* v. *Ayer,* 192 Ill. 601, 88 Am. St. 357, 61 N. E. 851; *McAurich* v. *Railroad Co.,* 20 Iowa, 338.) The question whether a more general law could be made applicable is matter of legislative discretion and judgment, not open to the courts. (*People* v. *McFadden,* 81 Cal. 499, 15 Am. St. Rep. 66, ?? Pac. 851; *People* v. *Mallender,* 132 Cal. 217, 64 Pac. 299.) Rules of practice made generally applicable to a class of special cases are within the legislative control and not violative of the restriction against special legislation regulating the practice of courts of justice. (*McDonald* v. *Conniff,* 99 Cal. 386, 390, 34 Pac. 71; *Boggs* v. *Ganeard,* 148 Cal. 712, 722, 84 Pac. 195, 199; *Cramer* v. *Tuttle,* 72 Cal. 12, 12 Pac. 869; *De Yoe* v. *Superior Court,* 140 Cal. 476, 98 Am. St. Rep. 73, 74 Pac. 28; *Jensen* v. *Frické,* 133 Ill. 171, 24 N. E. 515, 516.) The statute has a limited and temporary operation in a case of emergency, and that is a sufficient ground for special classification. (*Flynn* v. *Little Falls,* 74 Minn. 180, 78 N. W. 166; *Alexander* v. *Duluth,* 77 Minn. 445, 80 N. W. 623, 624; *Land Co.* v. *Soper,* 39 Iowa, 112.) The title of the act is not objectionable. (*De Yoe* v. *Superior Court,* 140 Cal. 472, 98 Am. St. Rep. 73, 74 Pac. 28.)

Gaillard Stoney, John J. Lermen, John Garber, *Amicus Curiæ,* Page, McCutchen & Knight, *Amici Curiæ,* A. E. Bolton, C. S. Farquar, and William B. Beaizley, *Amici Curiæ,* for Respondent.

The act in question violates the provisions of the state and federal constitutions requiring "due process of law" to divest the citizen of his property rights. (Cooley's Constitutional Limitations, 7th ed., 506.) The nature and not the name of the proceeding is to be considered on the question of "due process of law." (*Brown* v. *Board of Levee Comrs.,* 50 Miss. 468, 480; *State* v. *Guilbert,* 56 Ohio St. 575, 60 Am. St. Rep. 756, 47 N. E. 551.) The nature of the proceeding called for by the act is that of an action to establish and quiet title to real property, which is not *in rem,* but rather *in personam,* or, at most, quasi *in rem,* in which only parties and privies to the action are concluded. (Black on Judgments, sec. 793; Freeman v. *Alderson,* 119 U. S. 188, 7 Sup. Ct. 165; *Hollingsworth* v. *Barbour,* 4 Pet. 466, 475; *McDonald* v. *McCoy,* 121 Cal. 55,

69, 53 Pac. 421; *Bear Lake County* v. *Budge,* 9 Idaho, 203, 108 Am. St. Rep. 179, 75 Pac. 614; *Hill* v. *Henry,* 66 N. J. Eq. 150, 57 Atl. 554; *Andrews* v. *Quayaquil etc. Ry. Co.,* (N. J. Eq.), 60 Atl. 568; Loring, J., in *Tyler* v. *Court of Registration,* 175 Mass. 71, 55 N. E. 812; Benedict's Admiralty, p. 384; *Mankin* v. *Chandler,* 2 Brock. 125, Fed. Cas. No. 9030; *Cole* v. *The Brandt,* 1 Betts, 361, Fed. Cas. No. 2978; *The Heinrich Bjorn,* 10 P. D. 44.) Holders of non-conflicting equitable titles cannot be divested of their rights except by a suit *in personam.* (*Remer* v. *McKay,* 54 Fed. 432.) In an action to establish and quiet title to land ''due process of law'' requires personal service of summons upon the defendants, *if possible,* with due diligence, and it is only in cases of *necessity* that constructive service by publication is permissible. (*Bardwell* v. *Anderson,* 44 Minn. 97, 20 Am. St. Rep. 547, 46 N. W. 315; *Arndt* v. *Griggs,* 134 U. S. 316, 10 Sup. Ct. 557; *Perkins* v. *Wakeham,* 86 Cal. 580, 581, 21 Am. St. Rep. 67, 25 Pac. 51; *Shepherd* v. *Ware,* 46 Minn. 174, 24 Am. St. Rep. 212, 48 N. W. 773; *State* v. *Guilbert,* 56 Ohio St. 575, 60 Am. St. Rep. 756, 47 N. E. 551, 38 L. R. A. 519; *Leigh* v. *Green,* 64 Neb. 533, 101 Am. St. Rep. 592, 90 N. W. 255; *People* v. *Simon,* 176 Ill. 165, 68 Am. St. Rep. 175, 52 N. E. 910; *Bear Lake County* v. *Badge,* 9 Idaho, 703, 108 Am. St. Rep. 179, 75 Pac. 615; *Brown* v. *Board of Levee Comrs.,* 50 Miss. 468; *Tyler* v. *Court of Registration,* 175 Mass. 71, 55 N. E. 812; *Hill* v. *Henry,* 66 N. J. Eq. 150, 57 Atl. 554; *Andrews* v. *Quayaquil etc. Ry. Co.,* [N. J. Eq.], 60 Atl. 568.) The act in question requires no diligence to be shown by evidentiary facts, which showing is jurisdictional, and cannot be dispensed with. (*Forbes* v. *Hyde,* 31 Cal. 342, 349, 354.) The act contemplates an *ex parte* proceeding without controversy or the naming of any defendants, and is not a proper invocation of judicial power or jurisdiction. (Austin's Philosophy of Jurisprudence, sec. 1036; Miller on Constitution, 348; 3 Blackstone, 25, 66; *Cashman* v. *Cashman's Heirs,* 123 Mo. 549, 27 S. W. 549; *Tregea* v. *Modesto,* 164 U. S. 179, 17 Sup. Ct. 52; *Reid* v. *Darby,* 10 East. 143; *Denny* v. *Bennett,* 128 U. S. 489, 9 Sup. Ct. 34; *Cushing* v. *Laird,* 107 U. S. 69, 2 Sup. Ct. 196; *Reynolds* v. *Stockton,* 140 U. S. 254, 11 Sup. Ct. 773; *Blagge* v. *Moore,* 6 Tex. Civ. App. 359, 23 S. W. 470; *Harvey* v. *Harvey,* 73 N. H. 106, 59 Atl. 621; *Rodley* v. *Curry,* 120

Cal. 541, 52 Pac. 999; *Third-St. etc. Ry. Co.* v. *Lewis,* 173 U. S. 457, 19 Sup. Ct. 451; *Attorney-General* v. *Avon,* 3 DeG. J. & S. 637; *Case of Prohibitions,* 12 Coke, 63; *Silver* v. *Schuylkill County,* 32 Pa. St. 357; *Bradstreet* v. *Neptune Ins. Co.,* 3 Sum. 600, Fed. Cas. No. 1793; *Georgia* v. *Stanton,* 6 Wall. 50; *De Camp* v. *Archibald,* 50 Ohio St. 618, 40 Am. St. Rep. 692, 35 N. E. 1056; *In re Canadian Northern Ry.* v. *International Bridge Co.,* 7 Fed. 653; *Brewington* v. *Lowe,* 11 Ind. 21, 48 Am. Dec. 349; *Fuller* v. *Colfax County,* 14 Fed. 177, 178, 4 McCrary, 535; *Lord* v. *Veazie,* 8 How. 255, 12 L. ed. 1069; *Livingston* v. *D'Orgenoy,* 108 Fed. 469; *Carroll* v. *Lessee,* 16 How. 275, 286, 287; *Dunne* v. *State,* 163 Ind. 317, 71 N. E. 890; *Taylor* v. *Place,* 4 R. I. 324; *In re Senate Resolution,* 12 Colo. 466, 21 Pac. 478; *State* v. *Fleming,* 70 Neb. 523, 97 N. W. 1063; *Ex parte County Council,* 1 Q. B. 725; *Schooner Tilton,* 5 Mason, 465, 477, Fed. Cas. No. 14054.) The division of powers, under the constitution, requires the judicial power to be distinct, without encroachment of administrative function, and that it be construed in the light of the common law, which requires the judicial power to determine a present controversy between parties to an action. (*State* v. *Harmon,* 31 Ohio St. 250; *Sweet* v. *Syracuse,* 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289; *Kilbourn* v. *Thompson,* 103 U. S. 168, 190; *Lady Langdale* v. *Briggs,* 8 De G. M. & G. 391; *Ferrand* v. *Wilson,* 4 Hare, 385; *Rooke* v. *Lord Kensington,* 25 L. J. (N. S.) Ch. 795; *Southern Ry. Co.* v. *State,* 116 Ga. 276, 42 S. E. 508; *Mayor of Edinburgh,* 1 Macph. 887, 1 Sessions Cases, 3d series; *Cashman* v. *Cashman's Heirs,* 123 Mo. 647, 27 S. W. 549; *Lathrop* v. *Stuart,* 5 McLean, 167, Fed. Cas. No. 8113; *Blagge* v. *Moore,* 6 Tex. Civ. App. 359, 23 S. W. 470; *Ellis* v. *Davis,* 109 U. S. 486, 3 Sup. St. 327; *Lloyd* v. *Wayne, Circuit Judge,* 56 Mich. 236, 56 Am. St. Rep. 378, 23 N. W. 28; *State* v. *Guinotte,* 113 Mo. App. 399, 86 S. W. 884.) The act in question is void as being special legislation in matters of practice differing wholly from the practice required in civil actions, as to service by publication (Code Civ. Proc., secs. 413, 749), as to time for appearance (Code Civ. Proc., sec. 407), as to showing of diligence required for publication (Code Civ. Proc., secs. 412, 749), as to the index of actions (Pol Code, sec. 4204), as to notice of *lis pendens* (Code Civ. Proc., sec. 409, 712), and as respects practice upon appeals,

no defendants being named who have a right of appeal upon the record, and the plaintiff himself having no power to serve any notice of appeal, since all facts conferring jurisdiction upon appeal must appear upon the record appealed from (*In re Crooks' Estate,* 125 Cal. 459, 58 Pac. 89; *Constitution v. Woodworth,* 2 Ill. (1 Scam.) 511; *The Spark v. Lee Choy Chum,* 1 Sawy. 713, Fed. Cas. No. 13206; *Aiken v. Smith,* 54 Fed. 894, 4 C. C. A. 652; *Handley v. Anderson,* 5 Ind. Tr. 186, 82 S. W. 716), and practically allowing a confiscation of property of a person having no reasonable notice of the proceedings. (*In re Cook,* 86 App. Div. 586, 83 N. Y. Supp. 1009, 1011.) Decrees entered under the act in question are commercially valueless. (*Cella County Commrs. v. Bohlinger,* 147 Fed. 419; *Baart v. Martin* (Dist. Court of Minn.), Minn. Journal, April 8, 1905, 108 N. W. 945.)

SLOSS, J.—In June, 1906, the legislature of this state, having been convened in extraordinary session to legislate concerning certain needs developed by the disaster of April 18, 1906, enacted, among other statutes, one entitled "An act to provide for the establishment and quieting of title to real property in case of the loss or destruction of public records."

The present proceeding is an application for a writ of mandate. The petitioner herein filed a complaint, as provided by the act above referred to, and applied to the respondent, judge of the superior court in which its complaint had been filed, for an order for publication of summons. The respondent declined to make the order upon the ground that the act in question violated certain provisions of both the federal and state constitutions. The purpose of this proceeding being to compel the judge of the lower court to make the order for publication, as requested, the real, and substantially the only, question herein involved is whether or not the above-mentioned act is a valid exercise of legislative power. The facts alleged in the petition are not denied, and the matter now comes before the court upon a demurrer to the petition. In order to properly state and discuss the constitutional points made in support of the demurrer, it will be well to give a somewhat full statement of the provisions of the act in question.

The act provides that whenever the public records in the office of a county recorder are lost or destroyed, in whole or in any material part, by flood, fire, or earthquake, any person who claims an estate of inheritance or for life in, and who is by himself or his tenant or other person in the actual and peaceable possession of any real property in such county, may bring and maintain "an action *in rem* against all the world" in the superior court of the county where the land is situate "to establish his title to such property and to determine all adverse claims thereto." (Sec. 1.) The action is commenced by the filing of a verified complaint in which the party commencing the same is named as plaintiff, and the defendants are described as "all persons claiming any interest in or lien upon the real property herein described, or any part thereof." The complaint is to contain a statement of the facts enumerated in section 1 of the act, together with a particular description of the real property, and a specification of the estate or interest of the plaintiff therein. (Sec. 2.) The act provides for the issuing of a summons upon the filing of the complaint. The summons is directed to "all persons claiming an interest in or lien upon the real property herein described, or any part thereof," and requires them to appear within three months after the first publication of the summons, and to set forth what interest or lien, if any, they have upon the real property in question, a description of which is to be contained in the summons. At the time of the filing of the complaint the plaintiff must file with the same his affidavit fully and explicitly setting forth and showing: 1. The character of his interest, the duration of its existence, and from whom it was obtained; 2. Whether or not he has ever made any conveyance affecting the property, and if so, when and to whom, and a statement of any and all subsisting mortgages, deeds of trust, and other liens thereon; 3. That he does not know and has never been informed of any other person who claims or may claim any interest in or lien upon the property adversely to him, or if he does know and has been informed of any such person, then the name and address of such person. If the plaintiff is unable to state one or more of the matters required, he shall set forth and show fully and explicitly the reasons for such inability. This affidavit is

made to constitute a part of the judgment-roll.   (Sec. 5.)
The summons is required to be published in a newspaper
of general circulation published in the county in which
the action is brought, the particular newspaper to be desig-
nated by an order of the court or a judge thereof.   The
summons is to be published at least once a week for a period
of two months and to each publication there must be appended
a memorandum giving the date of the first publication of
the summons.   There must also be appended to the summons
a memorandum giving the names of any persons who are
known to the plaintiff to claim any interest in the property
adversely to the plaintiff, if the names of such persons ap-
pear in the affidavit filed with the complaint.   (Sec. 4.)   If
the affidavit discloses the name of any person claiming any
interest adversely to the plaintiffs, the summons must be per-
sonally served upon such person, if he can be found within
the state, together with a copy of the complaint and a copy
of the affidavit and memoranda provided for in section 4, and
if the person disclosed by the affidavit resides out of the
state, a copy of the summons, memoranda, complaint, and
affidavit must be sent to him by mail within fifteen days
after the first publication of the summons.   If he resides
within the state and cannot with due diligence be found
therein before the expiration of the period of the publication
of summons, then the copies shall be mailed to him forthwith
upon the expiration of the period of publication.   (Sec. 6.)
In addition to the service by publication and the personal
service and mailing above spoken of, the act provides that
a copy of the summons and of the memoranda referred to
shall be posted in a conspicuous place on each separate parcel
of the property described in the complaint within fifteen days
after the first publication of the summons.   (Sec. 4.)   Upon
the completion of the publication and posting of the sum-
mons and its service upon and mailing to the persons, if any,
upon whom it is directed to be personally served "the court
shall have full and complete jurisdiction over the plaintiff and
the said property and of the person of every one having or
claiming any estate, right, title or interest in or to, or lien
upon, said property or any part thereof, and shall be deemed
to have obtained the possession and control of such property

for the purposes of the action and shall have full and complete jurisdiction to render the judgment therein which is provided for in this act.'' (Sec. 7.) Any person having, or claiming any estate, right, title, or interest in, or lien upon, the property may at any time within three months from the first publication of the summons appear and make himself a party to the action by pleading to the complaint by a verified answer setting forth the estate or interest claimed. (Sec. 8.) The plaintiff and every defendant claiming any affirmative relief must at the time of filing his pleading record in the office of the recorder a notice of the pendency of the action containing a particular description of the property affected, and this notice is to be recorded in a book devoted exclusively to the recordation of said notices, and is to be entered upon a map of the land, to be kept by the recorder for that purpose, with a reference to the date, book, and page of the record of such notice. (Sec. 9.) No judgment is to be given by default, but the court must require proof of the facts alleged in the pleadings. (Sec. 10.) The judgment when given ''shall ascertain and determine all of the estate, rights, title, interests and claims in and to said property, and every part thereof, whether the same be legal or equitable, present or future, vested or contingent, or whether the same consists of mortgages or liens of any description, and shall be binding and conclusive upon every person who at the time of the commencement of the action had or claimed any estate, right, title or interest in or to said property, or any part thereof, and upon every person claiming under him by title subsequent to the commencement of the action.'' A certified copy of the judgment is to be recorded in the office of the recorder. (Sec. 11.) All provisions and rules of law relating to evidence, pleading, practice, new trial, and appeal applicable to other civil actions are, except as otherwise provided in the act, made applicable to this action. (Sec. 12.) The act provides that where one judgment under it has been entered as to any real property, no other action relative to the same property shall be tried until proof is first made to the court that all persons who appeared in the first action have been served with the papers in the new action, at least a month before the expiration of the time to plead. (Sec. 14.) Ex-

ecutors, administrators, guardians, or other persons holding the possession of property in the right of another may maintain the action as plaintiff, or appear and defend. (Sec. 15.) The remedies provided for by the act are to be deemed cumulative and in addition to any other remedy now or hereafter provided by law for quieting or establishing the title to real property. (Sec. 17.) All actions authorized by the act must be commenced before July 1, 1909. (Sec. 18.)

The general purpose of the statute is plain. It was intended to provide a method whereby owners in possession of real estate in counties where the records are destroyed to such an extent as to make it impossible to trace a record title may secure a decree which shall furnish a publicly authenticated evidence of title. It is hardly necessary to point out that under the system of registration of land titles which has grown up in all of the states of this Union it is practically essential to the security of ownership in real property that there exist some method by which the title can be made clear of record. Without regard to the effect of duly recorded instruments as constructive notice (whether or not the record remains in actual existence), the registration of titles has become so thoroughly imbedded in our system of dealing with lands that a title which cannot be traced and established by some form of public record is practically unmerchantable. It is of course true that for many centuries lands have been transferred in England, whence we have, in the main, derived our system of real property law, without any considerable resort to a public recording scheme. But in this country the system of registration has become so completely established that the courts can take judicial notice of the fact that in the great majority of cases parties dealing in real estate rely for the proof of their titles upon the chain of title that will be disclosed by an examination of the records, and in a small degree, if at all, upon the possession of the original instruments composing that chain. In many instances, indeed, these instruments are not preserved for any great length of time.

It is also matter of common knowledge that in the city and county of San Francisco at least, if not in other counties, the disaster of April last worked so great a destruction of the

CL Cal.—20

public records as to make it impossible to trace any title with completeness or certainty. That some provision was necessary to enable the holders and owners of real estate in this city to secure to themselves such evidence of title as would enable them not only to defend their possession, but to enjoy and exercise the equally important right of disposition, is clear. These considerations are suggested not with a view to arguing that the necessity for some act of this kind affords any ground for disregarding constitutional provisions, if the statute be found to conflict with such provisions, but rather as a guide to determine the real scope and purpose of the act, and to emphasize the rule so often laid down by all the courts that in passing upon the constitutionality of an act of the legislature every presumption and intendment in favor of the validity of the enactment are to be given effect.

1. One of the principal objections made to the act is that by the decree persons who may have an interest in the land are deprived of their property without due process of law. This contention is based upon the proposition that the proceeding created by this statute is a proceeding *in personam*, and not *in rem*, and that in personal actions a binding judgment cannot be rendered against the persons to be affected without giving them personal notice of the proceeding and an opportunity to be heard. It is conceded by the learned counsel for respondent, as it needs must be, that if this is strictly a proceeding *in rem* such personal notice is not required. Undoubtedly the act, so far as the language of the legislature can have this effect, attempted and intended to create a proceeding which should have the force and effect of a proceeding *in rem*. Section 1 describes the proceeding as "an action *in rem* against all the world." Section 11 provides that the judgment shall be binding and conclusive upon every person who at the time of the commencement of the action had or claimed any estate, right, title, or interest in or to the property.

It is, however, argued that if the proceeding is in its essential features one *in personam*, the legislature cannot, by merely designating it "*in rem*," cut off the rights of persons interested without providing as to them such notice and opportunity to be heard as are requisite to constitute due process in

personal actions.   That the mere title or designation which is given by the legislature to a proceeding cannot change its substantial character or alter the rights of parties to it is, of course, plain enough.   What, then, in its essential characteristics, is a proceeding *in rem?*   If, as contended by respondent, it is one "to enforce a liability for which the *res* is liable, irrespective of who owns it,—such a liability that the *res* can properly be impleaded as the respondent who is liable" (quoting the language of Loring, J., dissenting, in *Tyler* v. *Judges of Court of Registration,* 175 Mass. 71, [55 N. E. 812], the action provided for by the present statute does not come within the definition.   But neither do some other proceedings conceded to be strictly *in rem,* such as the probate of wills, the distribution of estates, and the special proceeding created by section 1664 of the Code of Civil Procedure to "ascertain and declare the rights of all persons" to an estate.   Even though, viewed as a matter of historical analogy, there may have been at common law no proceeding *in rem* which was at all similar to the one here provided, it may be asked why the state, in exercising its control over the ascertainment and settlement of title to real estate within its borders, may not create a suit *in rem,* in which the court assumes control of the land, and which has as its primary purpose the settlement of such titles as to all the world.   In substance—and the constitutional requirement of due process deals with substance rather than form—the action does not differ in character from the action to determine heirship (Code Civ. Proc., sec. 1664), which has always been regarded as a proceeding *in rem* (see *In re Blythe,* 110 Cal. 231, 234, [42 Pac. 643]), and sufficient to bar the rights of all persons claiming as heirs of the decedent, whether or not they are named in the complaint or personally served with summons.   It may be conceded, however, that apart from an expression of Chief Justice Holmes in *Tyler* v. *Judges,* 175 Mass. 71, [55 N. E. 433], there is no authority directly supporting the proposition that a proceeding of the kind created by this act is strictly *in rem.*   And we need not enter into a further discussion of the point, since we do not consider it necessary in this case to determine whether or not the action is one strictly *in rem.*

In any view the proceeding contemplated by the act is *quasi in rem*,—that is to say, the purpose of the proceeding is not to establish an "infinite personal liability" against any defendant, but is merely•to affect the interest of the defendant in specific real property within the state which has at the outset of the proceeding been brought within the control of the court. It is thoroughly well established that the constitutional requirement of due process is as to such actions satisfied by a substituted service of summons, at least as to known and designated defendants who cannot be found within the state. The most frequently cited authority upon the question of the power of a state to affect the interests of non-residents by judgments rendered upon a substituted service of summons is *Pennoyer* v. *Neff*, 95 U. S. 714. In that case the court, speaking through Mr. Justice Field, said, regarding the question of jurisdiction in cases of service by publication: "Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem*. . . . It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property without reference to the title of individual claimants, but, in a larger and more general sense, the term is applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state, they are substantially proceedings *in rem* in the broad sense which we have mentioned." Following the rules declared in *Pennoyer* v. *Neff*, it has universally been held that even in a purely personal action, where property within the state has been attached at the outset of a proceeding, the court may by publication of summons obtain jurisdiction to the extent of subjecting the attached property to the payment of the claim in suit.

The present proceeding has some of the characteristics of a suit to quiet title, a form of action well established as a branch of equity jurisdiction. While in the exercise of its inherent equity jurisdiction a court of chancery acts only *in personam,* it is no doubt competent for the legislature, so far as the constitutional provision regarding due process of law is concerned, to confer upon courts of equity a jurisdiction which shall, as to property situate within that state, operate upon it in some way other than by merely directing the defendants to do or refrain from doing some act concerning the property. The state has power to enact statutes under which the interests of persons in property within the state shall be affected so far as that property alone is concerned, and the action to quiet title, although originally under the old chancery practice merely a personal action against the defendant, may by statute be so extended as to permit the court to bind the interest of the defendant in the property, even though such defendant may not have been personally served with process within the state. *Arndt* v. *Griggs,* 134 U. S. 316, [10 Sup. Ct. 557], was a case involving the validity of a judgment obtained against a non-resident on publication of summons under statutes of Nebraska similar to our own (Code Civ. Proc., sec. 738 et seq.), authorizing persons claiming title to real estate to bring actions against any person or persons claiming an adverse estate or interest therein for the purpose of determining such estate or interest and quieting the title to said real estate. The court said: "But it is earnestly contended that no decree in such a case rendered on service by publication only is valid or can be recognized in the federal courts. . . . The propositions are, that an action to quiet title is a suit in equity; that equity acts upon the person; and that the person is not brought into court by service by publication alone. While these propositions are doubtless correct as statements of the general rules respecting bills to quiet title, and proceedings in courts of equity, they are not applicable or controlling here. The question is not what a court of equity, by virtue of its general powers and in the absence of a statute might do, but it is, What jurisdiction has a state over titles to real estate within its limits, and what jurisdiction may it give by a statute to its own courts, to determine the validity and extent of the claims of non-residents to such real estate? If a state has no

power to bring a non-resident into its courts for any purposes by publication, it is impotent to protect the titles to real estate within its limits held by its own citizens; and a cloud cast upon such title by a claim of a non-resident would remain for all time a cloud, unless such non-resident shall voluntarily come into its courts for the purpose of having it adjudicated. But no such imperfections attend the sovereignty of the state. It has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subject to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto. It cannot bring the person of a non-resident within its limits—its process goes not out beyond its borders—but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable methods of imparting notice. The well-being of every community requires that the title to real estate therein shall be secure, and that there be convenient and certain methods of determining any unsettled questions respecting it." And in *Perkins* v. *Wakeham,* 86 Cal. 580, [21 Am. St. Rep. 67, 25 Pac. 51], this court, in applying the same rule to a similar case, said: "Unless the method of giving notice above prescribed (i. e. by publication under section 412 of the Code of Civil Procedure) is unreasonable or in conflict with some provision of the constitution or principle of natural justice, it cannot be held invalid. In determining the question of its validity, the nature of the action and the effect of the judgment must be considered. While it is true, as a general proposition, that an action to quiet title is an action in equity which acts upon the person, it is also true that the state has power to regulate the tenure of immovable property within its limits, the conditions of its ownership, and the modes of establishing the same, whether the owner be citizen or stranger. While a decree quieting title is not *in rem,* strictly speaking, it fixes and settles the title to real estate, and to that extent certainly partakes of the nature of a judgment *in rem.*" There may be some expressions in the opinion in *Hart* v. *Sansom,* 110 U. S. 151, [3 Sup. Ct. 586], which, on their face, conflict with the rule as declared in the two cases just cited. In *Arndt* v. *Griggs,* however, the court carefully explained the Sansom case, and

pointed out that that case had to do with the effect of a judgment obtained on publication of summons in a purely personal action. Similarly in *Lynch* v. *Murphy,* 161 U. S. 247, 251, [16 Sup. Ct. 523], it was said: "The Hart case was explained in *Arndt* v. *Griggs,* 134 U. S. 316, [10 Sup. Ct. 557], in which last case it was held that the duty of determining unsettled questions respecting the title to real estate was local in its nature, to be discharged in such mode as might be provided by the state in which the land was situated, where such mode did not conflict with some special inhibition of the constitution and was not against natural justice; and we held that nothing inconsistent with this doctrine was decided in *Hart* v. *Sansom.*" (See, also, *Roller* v. *Holly,* 176 U. S. 398, [20 Sup. Ct. 410] ; *Bennett* v. *Fenton,* 41 Fed. 283; *Venable* v. *Dutch,* 37 Kan. 515, [1 Am. St. Rep. 260, 15 Pac. 520] ; *Dillon* v. *Heller,* 39 Kan. 599, [18 Pac. 693] ; *McLaughlin* v. *McCrory,* 55 Ark. 442, [29 Am. St. Rep. 56, 18 S. W. 762] ; *Harris* v. *Palmore,* 74 Ga. 273; *Lane* v. *Innes,* 43 Minn. 137, [45 N. W. 4] ; *Shepherd* v. *Ware,* 46 Minn. 174, [24 Am. St. Rep. 212, 48 N. W. 973] ; *Lantry* v. *Parker,* 37 Neb. 353, [55 N. W. 962] ; *Sloane* v. *Martin,* 145 N. Y. 524, [45 Am. St. Rep. 630, 40 N. E. 217] ; *Roller* v. *Holly,* 13 Tex. Civ. App. 636, [35 S. W. 1074].)

So far, then, as the procedure authorized by the act under discussion affects the rights of persons known and designated in the proceedings who could not, on account of non-residence or for other sufficient reason, be personally served with summons within the state, it cannot, in view of these adjudications, be said that the service by posting, publication, and mailing fell short of that due process of law which is applicable to this sort of proceeding. The objection that under the act no persons need be named as defendants in the title of the action does not appear to us to have any bearing upon the question of due process of law, so far as known claimants are concerned. The constitutional guaranty of due process requires that in actions of this character persons whose interest in the land may be affected must be given such notice of the pendency of the proceeding and of the fact that their interests may be affected as is reasonable and appropriate to the nature of the case. If it be once conceded, as it must be, that such notice may, as to known claimants who cannot be personally served, be given by publication, we think it unimportant that the

person to whom such notice is given is not named in the caption of the complaint or the summons. The law requires him to be named in the affidavits and in the memoranda attached to the summons. If any notice whatever reaches such person, it will be, whether through the posting upon the premises, or the publication, or the service by mail, a notice which contains his name and advises him that his interest in the described property is involved in the proceeding, and that in order to defend such interest he must appear and plead within a given time. We see no reason why, so far as such designated claimants are concerned, the notice prescribed by the act does not satisfy every requisite of due process of law.

The principal contention upon this question of due process is that the act is unconstitutional in that it seeks to bar by the decree the rights of unknown owners, that is, those who are not alleged in the complaint or the affidavit to claim any interest in the property and who cannot have any notice of the fact that their rights are involved other than the general notice given by the posting and the publication.

If by a substituted service of any sort a court may be given power to adjudicate the rights of unknown claimants in a proceeding of this character, it seems plain that the notice to such claimants here provided is sufficient. All substituted service must rest upon the ground of necessity, and, where it is permissible at all, it must be such as would be reasonably likely to bring the fact of the pendency and the purpose of the proceeding to the attention of those interested. Where, as here, the summons describing the nature of the action, the property involved, the name of the plaintiff and the relief sought, is posted upon the property, and is published in a newspaper for two months, and a *lis pendens* containing the same particulars is recorded in the recorder's office. and entered upon the recorder's map of the property, we cannot doubt that, so far as concerns the possible claimants who are not known to the plaintiff, the notice prescribed by the act is as complete and full as, from the nature of the case, could reasonably be expected.

Indeed, the learned counsel for respondent, while they make some criticism upon details of the act regarding the notice, take their stand upon a broader proposition, and contend that in a proceeding which is not strictly *in rem* it is not within the

power of the legislature to authorize on any form of process a decree which shall by its own force cut off the rights of persons not named or made parties to the proceeding. It is claimed that under the constitutions in force in American jurisdictions, the rights of unnamed persons who may claim an interest in real estate cannot be cut off by any judicial proceeding except by one which makes the adjudication against them final only upon their failure to come in and assert their rights within a specified time after the judgment or decree. In such proceeding the decree does not operate *ex proprio vigore,* but becomes the starting point of a statutory period of limitation and the right is extinguished by failure to assert it within this period. In a way, the procedure thus outlined is analogous to the common-law fine, but because such method of accomplishing the result may have been the only one known to the common law, it does not follow that other methods may not be devised by the legislature without exceeding the limits of due process of law. No doubt the forms of procedure in common use at the time the constitutions were adopted must be taken to have been understood by the framers as embraced within the terms "due process of law." But in prohibiting the taking of life, liberty, or property without due process of law, those who adopted these constitutions did not intend to provide that the details of practice and procedure then existing should forever remain unchanged. The legislature may provide entirely novel and unprecedented methods of procedure, provided that they afford the parties affected the substantial securities against arbitrary and unjust spoliation which are embraced within the system of jurisprudence prevailing throughout the land. "It follows," says the Supreme Court of the United States in *Hurtado* v. *California,* 110 U. S. 516, [4 Sup. Ct. 111], "that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law." It is not, therefore, a sufficient objection to the action created by this statute to say that no precisely similar proceeding was known to the common law.

Applying the principles which have led the courts in cases like *Arndt* v. *Griggs,* 134 U. S. 316, [10 Sup. Ct. 557], and

*Perkins* v. *Wakeham,* 86 Cal. 580, [21 Am. St. Rep. 67, 25 Pac. 51], to sustain judgments quieting titles against non-residents upon substituted service, why should not the legislature have power to give similar effect to such judgments against unknown claimants where the notice is reasonably full and complete? The validity of such judgments against known residents is based upon the ground that the state has power to provide for the determination of titles to real estate within its borders and that as against non-resident defendants or others who cannot be served in the state, a substituted service is permissible, as being the only service possible. These grounds apply with equal force to unknown claimants. The power of the state as to titles should not be limited to settling them as against persons named. In order to exercise this power to its fullest extent it is necessary that it should be made to operate on all interests, known and unknown. As was said by Holmes, C. J., in *Tyler* v. *Judges of the Court of Registration,* 175 Mass. 71, [55 N. E. 812], in speaking of a statute which in the particular under discussion was similar to ours: "If it does not satisfy the constitution, a judicial proceeding to clear titles against all the world hardly is possible; for the very meaning of such a proceeding is to get rid of unknown as well as known claimants,—indeed, certainty against the unknown may be said to be its chief end,—and unknown claimants cannot be dealt with by personal service upon the claimant."

Proceedings not strictly *in rem,* but intended to have the effect of barring unknown claimants who are brought in only by publication, or other substituted service, are not entirely new in our legislation. Leaving out of consideration proceedings for the probate of wills, for distribution of estates, escheats, and tax cases and the special proceedings to determine heirship provided by section 1664 of the Code of Civil Procedure, all of which are claimed by respondent to be distinguishable from the case at bar in that, as claimed, they are proceedings strictly *in rem,* we find in our statutes, in sections 749 to 751 of the Code of Civil Procedure, enacted in 1901, a statutory action to determine adverse claims to and clouds upon title to real property as against known defendants, and "also all other persons unknown, claiming any right, title, estate, lien or interest in the real property de-

scribed in the complaint adverse to plaintiff's ownership, or any cloud upon plaintiff's title thereto." It is true that the constitutionality of these sections has not yet been passed upon by this court. But that the state may confer upon its courts jurisdiction to declare title to real property within the state to be vested in the plaintiff as against other claimants, known or unknown, upon substituted service, has been held by the courts of several states in well-considered cases. In *Shepherd* v. *Ware,* 46 Minn. 174, [24 Am. St. Rep. 212, 48 N. W. 773], the court upheld a statute authorizing an action to quiet title and determine adverse claims, and providing for including as defendants, in addition to persons appearing of record or known to have a claim to the lands in controversy, "also all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the complaint herein." Service was authorized to be made upon such unknown defendants by publication. A judgment obtained pursuant to the statute was held to bind persons not named in the complaint or personally served, the court saying: "The legislature may, in its discretion, provide for substituted service in case of necessity, or where personal notice is for any reason impracticable, in an action where the controversy relates to property which is within the jurisdiction of the court; and with a reasonable exercise of such legislative discretion the courts will not assume to interfere." This case was followed in *McClymond* v. *Noble,* 84 Minn. 329, [87 Am. St. Rep. 354, 87 N. W. 838]. In *State* v. *Westfall,* 85 Minn. 437, [89 Am. St. Rep. 571, 89 N. W. 175], the court said: "It is now the settled doctrine of this court that the district courts of this state are clothed with full power to inquire into and conclusively adjudicate the state of the title of all land within their respective jurisdictions, after actual notice to all the known claimants within the jurisdiction of the court, and constructive notice by publication of the summons to all other persons or parties, whether known or unknown, having or appearing to have some interest or claim thereto. The proceeding provided for by the act in question is such an one. It is substantially one *in rem,* the subject-matter of which is the state of the title of land within the jurisdiction of the court, and the provisions of the act for serving the summons and giving notice of the pendency of the proceedings are full

and complete, and satisfy both the state and federal constitutions. To hold otherwise would be to hold that the courts of this state cannot in any manner acquire jurisdiction to clear and quiet title to real estate by a decree binding all interests and all persons or parties, known or unknown." *Tyler* v. *Judges of the Court of Registration*, 175 Mass. 71, [55 N. E. 812], was a proceeding brought to test the constitutionality of an act of the legislature of Massachusetts providing a method of land registration based upon the "Torrens system" so called. It was provided in the act that the decree for registration "shall bind the land and quiet title thereto," and "shall be conclusive upon and against all persons" whether named in the proceedings or not. The court held that the act did not violate the constitutional provisions as to due process of law. Chief Justice Holmes, who delivered the opinion of the court, expressed the view that the proceeding was one *in rem* in the most limited sense of the term. The majority of the court did not concur in this view, but did agree that whether or not the proceeding was strictly *in rem*, the requirement of due process was satisfied by giving to parties known, or who by reasonable effort could be known, notice by personal service or its equivalent, and to parties unknown notice by publication.

*People* v. *Simon*, 176 Ill. 165, [68 Am. St. Rep. 175, 52 N. E. 910], involved the validity of the act of 1897, establishing the "Torrens system" in Illinois. The law was upheld, and while the language of the opinion is not, perhaps, entirely clear, a careful reading of what was said on the point under discussion leads us to the conclusion that the court intended to hold, and did hold, that there was no violation of the constitution in the provisions of the act, coupled with those of the general law of Illinois, authorizing service by publication as against unknown owners and non-residents.

It is not to be denied that authority, and that of a high character, is cited in opposition to the views just expressed. The opinion of Justice Loring, dissenting, in *Tyler* v. *Judges of the Court of Registration*, 175 Mass. 71, [55 N. E. 812], and that of Vice-Chancellor Stevens in *Hill* v. *Henry*, 66 N. J. Eq. 150, [57 Atl. 554], both relied on by respondent, are careful and elaborate expositions of the law. They rest their conclusion, however, upon the proposition that the proceeding in

question is not strictly *in rem*. For the reasons heretofore stated, we do not regard this ground, if it be well taken, as determinative of the question involved. In *State* v. *Guilbert,* 56 Ohio St. 575, [60 Am. St. Rep. 756, 47 N. E. 551], the court declared the Ohio "Torrens Law" to be unconstitutional. While there is in the opinion some language which lends apparent support to the contentions of respondent, the fact is that the law there involved did not require personal service of summons or notice even upon resident claimants, whose existence, names, and places of abode were all known to the plaintiff or petitioner. The same defect attached to the statutes which were declared null in *Brown* v. *Board,* 50 Miss. 471, and *Webster* v. *Reid,* 11 How. (U. S.) 437. That, as to such defendants, a service by publication is not sufficient to constitute due process of law in a proceeding not strictly *in rem* must be admitted. And in this connection it may be well to notice the contention of respondents, that by the terms of the act now under consideration the plaintiff in the proposed action may include among "unknown claimants" those who, with reasonable diligence on his part, might have become known to him. It is no doubt true that, so far as substituted service upon a class of unknown claimants is permitted at all, in proceedings which are merely quasi *in rem,* it rests upon the ground of necessity, and that this necessity will not justify the omission of personal service upon all who could with reasonable diligence be ascertained and found. This principle is recognized even in the cases which sustain the power to bind "unknown owners" by substituted service in actions of the character now under consideration. (*Tyler* v. *Judges of the Court of Registration,* 175 Mass. 71, [55 N. E. 812] ; *Shepherd* v. *Ware,* 46 Minn. 174, [24 Am. St. Rep. 212, 48 N. W. 773].) But we think that, on a proper construction, the act under examination does require the plaintiff to designate and to serve as known claimants all whom with reasonable diligence he could ascertain to be claimants. It is not clear, as claimed by petitioner, that section 5 of the act requires in the affidavit a statement of the examination and inquiry made by plaintiff to enable him to aver that "he does not know and has never been informed of" any person claiming adversely. But apart from the affidavit the evident purpose of the act is to secure, so far as possible, actual notice of the proceeding to all known

claimants—by personal service if they reside and can be found within the state, by mailing if they cannot be so found or are non-residents. We have no doubt that where the statute is thus careful to secure actual notice to known claimants, it should not be construed as intended to permit a plaintiff to willfully or negligently close his eyes to the means' of knowledge and thus secure a decree by publication and posting alone, as against persons whose identity he might have learned by the use of due effort. For the purposes of this statute the adverse claimants whom plaintiff "knows or of whom he has been informed" include all as to whom he would, by reasonable inquiry, have had knowledge or information. It is unnecessary to multiply authorities in support of the well-settled rule that "the means of knowledge is equivalent to knowledge." (Civ. Code, sec. 19; *Wood* v. *Carpenter*, 101 U. S. 135; *Shain* v. *Sresovich*, 104 Cal. 402, [38 Pac. 51].) The rule applies wherever the circumstances impose upon the party the duty of inquiry (*Bank of Mendocino* v. *Baker*, 82 Cal. 114, [22 Pac. 1037] ; *Prouty* v. *Devin*, 118 Cal. 258, [50 Pac. 380]), and we are satisfied that the statute in question imposes upon the party seeking to proceed under it the duty of inquiry as to the names and residences of all persons who may claim an adverse interest in the property. (*Leigh* v. *Green*, 64 Neb. 533, [101 Am. St. Rep. 592, 90 N. W. 255] ; *Mulvey* v. *Gibbons*, 87 Ill. 367; citing further *Farnham* v. *Thomas*, 56 Vt. 33.) So construed the statute does not, nor can an action prosecuted under it, deprive any person of his property without due process of law.

2. It is strongly urged for the respondent that the "action" contemplated by the statute is not a judicial but an administrative proceeding. The disposition of such proceeding being by the act conferred upon the superior court, it is claimed that there is a violation of the provision of the state constitution (art. III, sec. 1), dividing the powers of government into three departments,—the legislative, executive, and judicial,—and prohibiting the exercise by any one of these departments of functions appertaining to either of the others. It is also claimed as another result from the same premise that to divest property rights by a proceeding which is not judicial is not "due process of law."

To maintain the position that the proceeding is not judicial, the argument is advanced that the jurisdiction of the court is (at least in cases where there is no "known" adverse claimant) invoked upon a mere allegation of the petitioner's right or title, without any assertion that such right is assailed or disputed by any one, and that in such cases the decree rendered is a mere declaration of right, made substantially upon an *ex parte* application.  It is not to be disputed that, as a general proposition, the judicial function is the determination of controversies between parties, and that the courts will not concern themselves with settling abstract questions of law which may never be involved in an actual dispute regarding property or other rights.  Quotations to this effect may be found in a multitude of cases, many of which are cited in the briefs.  But it is not to be understood that it is never the exercise of a judicial function for a court to act upon the application of a party who seeks some form of relief, even though at the outset of the proceeding no person is named or designated as opposing the granting of such relief.  "It is certainly clear as a general rule," says Selden, J., in *Cooper's Case*, 22 N. Y. 84, "that whenever the law confers a right, and authorizes an application to a court of justice to enforce that right, the proceedings upon such an application are to be regarded as of a judicial nature."  In the present case there is a provision for notice to all persons interested in opposing the plaintiff's application, and an opportunity to them to come in and oppose it.  There are in our law many instances of proceedings which are analogous to the one under discussion, and they have uniformly been regarded as judicial.  Thus, we do not question that the superior court exercises judicial functions in granting letters of administration, or admitting a will to probate, or ordering the sale of property of decedents, or distributing estates of decedents, or determining and declaring heirship, notwithstanding the suggestion made in one of the briefs that probate proceedings are "administrative."  At any rate, it cannot be denied that such proceedings are judicial, where in response to the published or posted notice some person interested appears to contest the application, although at the outset the petition does not in any of the instances cited disclose a "controversy" or an "invasion of the petitioner's right" in any sense in which such elements

are not present in the action brought under the statute now being considered. A petition for change of name (Code Civ. Proc., secs. 1275-1279) discloses neither controversy nor an actual or threatened denial by any one of petitioner's. right, yet such proceeding is judicial. (*In re Societe Francaise*, 123 Cal. 525, [56 Pac. 458].)

Indeed, so far as this court is concerned the question would seem to be foreclosed by the repeated decisions holding the proceeding for the confirmation of the organization of irrigation districts (Stats. 1889, p. 12) to be judicial, and properly committed to the superior court for determination. (*Cullen* v. *Glendora Water Co.*, 113 Cal. 503, [39 Pac. 769, 45 Pac. 822, 1047]; *People* v. *Linda Vista Irrigation District*, 128 Cal. 477, [61 Pac. 86]; *People* v. *Perris Irrigation District*, 132 Cal. 289, [64 Pac. 399, 773]; *People* v. *Perris Irrigation District*, 142 Cal. 601, [76 Pac. 381].) In *People* v. *Linda Vista Irrigation District*, 128 Cal. 477, [61 Pac. 86], this court adhered to its earlier views regarding the construction and effect of the confirmatory statute of 1889, notwithstanding the suggestion of Brewer, J., in *Tregea* v. *Modesto Irrigation District*, 164 U. S. 179, [17 Sup. Ct. 52], to the effect that the proceeding for confirmaton presented a mere moot case, not calling for judicial consideration. But even the acceptance of the views of Justice Brewer would not require us to hold that the proceeding here involved is not judicial. The action or special proceeding now in question is devised, as has been stated, for the purpose of establishing a title which is in fact good, but which is not deducible of record. That a court of equity may remedy such defect by a decree, although there is no actual controversy as to the title, was held in *Sharon* v. *Tucker*, 144 U. S. 533, [12 Sup. Ct. 720], the court saying: "The title of the complainants is not controverted by the defendants, nor is it assailed by any action for the possession of the property, and this is not a suit to put an end to any litigation of the kind. It is a suit to establish the title of the complainants as matter of record, that is, by a judicial determination of its validity, and to enjoin the assertion by the defendants of a title to the same property from the former owners, which has been lost by the adverse possession of the parties through whom the complainants claim." (See, also, *Blight* v. *Banks*, 6 Mon. T. B. 192, [17 Am. Dec. 136].)

And this court has held, that in an action to quiet title under sections 738 and 739 of the Code of Civil Procedure the absence of a finding that the defendants asserted a claim adverse to the plaintiff is immaterial. (*Bulwer Cons. Min. Co.* v. *Standard Cons. Min. Co.*, 83 Cal. 589, [23 Pac. 1102].) "Even though the defendant makes no adverse claim," says the court, "third persons may regard plaintiff's title as being subject to an adverse claim by the defendant, which would be a cloud upon plaintiff's title, depreciating its value, and which he would be entitled to have removed by the decree of the court." The action here involved may well, as claimed by petitioner, be regarded as a suit to remove a cloud upon titles, the legislature having power to declare what shall form such cloud (*Clark* v. *Smith*, 13 Pet. 195), and having in effect declared by this statute that the destruction of public records constitutes a cloud upon title.

Again, it will be observed that in other states statutes providing for the determination of titles, under the Torrens system by administrative officers have been assailed and declared void upon the ground that the power of determining such titles was essentially judicial and to be exercised only by the courts. (*People* v. *Chase*, 165 Ill. 527, [46 N. E. 454]; *State* v. *Guilbert*, 56 Ohio St. 575, [60 Am. St. Rep. 756, 47 N. E. 551].) The same view as to the nature of such functions was taken in *Tyler* v. *Judges of the Court of Registration*, 175 Mass. 71, [55 N. E. 812]; *People* v. *Simon*, 176 Ill. 165, [68 Am. St. Rep. 175, 52 N. E. 910]; *State* v. *Westfall*, 65 Minn. 437, [89 Am. St. Rep. 571, 89 N. W. 175].

The argument, advanced with much force and ability, that even a judicial proceeding cannot divest property rights, in the absence of an allegation of a controversy between parties to the record, may be viewed as a restatement, in another form, of the objections to statutes authorizing judgments against "unknown owners." This contention, if adopted, would require us to hold that, except in proceedings strictly *in rem*, no statute can constitutionally authorize valid judgments as against persons not ascertained or made parties defendant by name or other specific description. For the reasons before given we cannot accept this conclusion.

3. Finally, it is said that the statute violates the provision of the state constitution prohibiting the legislature from pass-

ing local or special laws in certain cases. Among the subjects included in the constitutional prohibition are laws "regulating the practice of courts of justice" (Const., art. IV, sec. 25, subd. 3), and "cases where a general law can be made applicable" (Const., art. IV, sec. 25, subd. 33), and these are the provisions principally relied on. The questions thus raised are sufficiently serious and important to merit a full discussion, but by reason of the length which this opinion has already attained we are compelled to be brief in disposing of them.

Unquestionably this statute does make a number of provisions regarding the practice in the actions or proceedings here provided for which are not to be found in other judicial proceedings in this state. For example, the complaint does not name any defendants, even though there may be known adverse claimants. The names of known defendants do not appear in the caption of the complaint or the summons, nor in the body of the summons. In other respects, too, the summons is different in form from that used in ordinary civil actions. The proceedings for publication of summons differ in various particulars from the general statutory methods provided for publication of summons by sections 412 and 413 of the Code of Civil Procedure. Thus, no affidavit of diligence is required; the court is not authorized to designate a paper "as most likely to give notice" to the defendants; the order for publication is not required to direct the summons to be mailed forthwith to non-resident defendants; the period of publication is fixed by the statute at two months and is not in the discretion of the court. The foregoing enumeration, while not complete, represents in a general way the nature of the differences to be found between the procedure here authorized and that prescribed by the Code of Civil Procedure for ordinary civil actions. Do these differences render the act obnoxious to the constitutional provisions regarding special laws? This court has had occasion many times to consider what are special laws. "It is not necessary that a law shall affect all the people of a state in order that it may be general, or that a statute concerning procedure shall be applicable to every action that may be brought in the courts of the state. A statute which affects all the individuals of a class is a general law, while one which relates to particular persons or things

of a class is special." (*McDonald* v. *Conniff*, 99 Cal. 386, 391, [34 Pac. 71].)    The question of what is a special law as applied to the practice of courts of justice was carefully considered by this court in *Deyoe* v. *Superior Court*, 140 Cal. 476, [98 Am. St. Rep. 73, 74 Pac. 28], and it is sufficient here to restate what was said in that case.    "But the mere fact that it (i.e. a statute) operates only on one class of cases does not make it repugnant to the constitutional provision. Our statutes contain many provisions regulating the practice of courts of justice, applicable only to certain classes of actions or special proceedings, made necessary by the nature of the objects and purposes of the various classes.    The legislature has the right to enact laws applicable only to one class of its citizens where the classification is authorized by the constitution, or is based upon intrinsic differences requiring different legislation.    The law in this regard was well stated by this court, through Mr. Justice Harrison, in *People* v. *Central Pacific R. R. Co.*, 105 Cal. 576, 584, [38 Pac. 905, 906], where it was said: 'A law which operates only upon a class of individuals is none the less a general law, if the individuals to whom it is applicable constitute a class which requires legislation peculiar to itself in the matter covered by the law.'    The class, however, must not only be germane to the purpose of the law, but must also be characterized by some substantial qualities or attributes which render such legislation necessary or appropriate for the individual members of the class.    It may be 'founded on some natural or intrinsic or constitutional distinction' (*Pasadena* v. *Stimson*, 91 Cal. 251, [27 Pac. 604]), but the distinction must be of such a nature as to reasonably indicate the necessity or propriety of legislation restricted to that class."    (See, also, *Rode* v. *Siebe*, 119 Cal. 518, [51 Pac. 869].)    The classification must not be arbitrary, for the mere purpose of classification, but must be founded upon some natural or intrinsic or constitutional distinction which will suggest a reason which might rationally be held to justify the diversity in the legislation. (*Pasadena* v. *Stimson*, 91 Cal. 238, 251, [27 Pac. 604] ; *Darcy* v. *Mayor etc.*, 104 Cal. 642, [38 Pac. 500].)

"If the individuals to whom the legislation is applicable constitute a class characterized by some substantial qualities or attributes of such a character as to indicate the necessity

or propriety of certain legislation restricted to that class, such·
legislation, if applicable to all members of that class, is not
violative of our constitutional provisions against special legis-
lation.''

Under these rules we think the proceeding created by the
act in question is sufficiently distinct and different from ordi-
nary civil actions covered by the general rules of the code to
justify the creation of a class which shall be characterized by
the special rules of procedure here provided.  As we have
said, this act is intended to remedy an evil arising from an
unusual circumstance, to wit, the destruction of the public·
records and the consequent inability to deduce a safe or
merchantable title to real estate.  Such inability furnishes a
good reason for the creation of a procedure which shall enable
owners of real estate to establish their titles, not only as
against known adverse claimants, but as against even unknown
and undetermined persons who may claim adversely.  Many
of the differences above referred to are rendered necessary
by the fact that this proceeding seeks to bind such unknown
claimants.  Thus, since claimants can be brought in only by
publication of summons, it would be useless to require the
plaintiff to furnish to the court an affidavit upon which the
court may determine whether or not summons shall be pub-
lished.  If it is to be published in every case, why should there
be proof of special facts authorizing a publication?  Again,
the fact that the court or judge cannot know who may be
affected by the proceeding seems to furnish a reason for not
requiring the designation of any particular newspaper as
''most likely to give notice to the person to be served.''  The
provision that the summons should be mailed to non-resident
defendants within fifteen days, instead of forthwith, as re-
quired in ordinary actions, finds a reasonable justification in
the fact that the summons so mailed must have attached to it
a memorandum showing the date of the first publication.  As
the first publication may be some days after the order for
publication, it might be impossible to attach this memorandum
to the copy of the summons to be mailed, if such mailing were
to take place forthwith.

The objections which are urged to the provisions of the
statute authorizing a special form of complaint and summons
may, we think, all be answered by saying that the proceeding

in question differs so materially from most actions as to justify such peculiarities in procedure. The primary purpose of the proceeding is to determine the *status* of the title to specific property. While the rights of individuals are necessarily involved and adjudicated, this primary purpose is sufficient to justify a form of pleading and process which shall direct attention to the land to be affected rather than to the persons who may be interested in it.

Our codes are full of provisions making special rules applicable to different classes of cases, and it has never been supposed that such provisions are invalid merely because the procedure in each case is not in every particular exactly the same as for every other case. Thus, in actions for unlawful detainer the summons is returnable not less than three nor more than twelve days from its date (Code Civ. Proc., sec. 1166), thereby reducing the defendant's time to appear or answer below the ten days allowed in ordinary actions. The chapter providing for actions against steamers, vessels, and boats contains special provisions for the contents of the complaint (Code Civ. Proc., sec. 815), and for the service of summons (Code Civ. Proc., sec. 816). The summons in proceedings in eminent domain differs in various particulars from the form of summons in civil actions (Code Civ. Proc., sec. 1245). In proceedings relative to escheated estates the order requiring persons interested to appear and show cause why the estate should not vest in the state is published for one month, and parties interested have forty days from the date of the order to appear instead of having thirty days after a publication for at least two months, as in other cases of publication of summons. All of these differences may be upheld upon the ground that the proceeding in question is of such a peculiar nature as to justify its classification for purposes of procedure. Without considering in detail every point in which this act is said to differ from the code defining the general procedure in civil actions, we are satisfied that here, as in the Deyoe case, the nature of the proceeding is such as to justify the legislature in creating for it the special procedure prescribed by the statute. After all, the question of classification is primarily for the legislature. The court is not to set aside a statute merely because in its view it may have been unwise or unnecessary to apply certain rules to one

class of cases. Before the act can be declared invalid on this ground, it must appear to the court that there was no reasonable basis on which the peculiar legislative provision could have been made. We are not prepared to say that the needs which called this legislation into being, and the purposes sought to be accomplished, were not so peculiar in their character as to permit the legislature to devise this remedy and these methods of seeking it.

It is not necessary to decide at this time whether parties not personally served may come in and defend within one year after judgment, as provided in section 473 of the Code of Civil Procedure. Whether that section applies to proceedings under this act is a question of construction, which can best be considered when it arises in a case directly involving the point. We doubt that the interpretation excluding the right to come in would invalidate the act. If it should be considered to have such effect, that would be sufficient ground for construing the act so as to allow the application of section 473 of the Code of Civil Procedure,—a construction that is certainly possible under section 12 of the statute.

The objection is made that the act is special because it applies only where the records have been destroyed by earthquake, fire, or flood. Possibly public records might be destroyed by other causes, but certainly the three agencies of destruction named are those which are most likely to occur in this state, and are the only ones which, so far as we know, have in our past history caused any considerable destruction of public records. These facts furnish ample ground for limiting the operation of the act to the cases to which it has been made applicable.

The title of the act is sufficient to comply with article IV, section 24 of the constitution. (*Ex parte Liddell*, 93 Cal. 633, [29 Pac. 251]; *Deyoe v. Superior Court*, 140 Cal. 476, [98 Am. St. Rep. 73, 74 Pac. 28].)

A peremptory writ of mandate will issue as prayed.

Angellotti, J., Henshaw, J., Shaw, J., McFarland, J., Lorigan, J., and Beatty, C. J., concurred.

Rehearing denied.